IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 18-83442-CRJ-11 |
| | ) | |
| WILLIAM BARRIER ROBERTS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT
PURSUANT TO BANKRUPTCY CODE SECTION 1125(a)**

Pursuant to § 1125(a) of Title 11 of the United States Code (the "Bankruptcy Code"), as creditors and parties in interest in the above captioned proceeding (this "Case"), Melanie Hammer Murray ("Melanie"), Rhett Murray ("Rhett"), and Bullet & Barrel, LLC ("Bullet & Barrel" and, together with Melanie and Rhett, the "Creditors") file this *Objection to Debtor's Disclosure Statement Pursuant to Bankruptcy Code Section 1125(a)* (this "Objection") in response to the *Disclosure Statement for Chapter 11 Plan of William Barrier Roberts Debtor and Debtor-in-Possession* (Doc. 98) (the "Disclosure Statement")[1] filed by William Barrier Roberts ("Debtor") and in accordance with the Court's *Order Scheduling Hearing on Disclosure Statement and Setting Deadline for Filing Objections to Disclosure Statement* (Doc. 100). In support of this Objection, the Creditors state as follows:

**RELIEF REQUESTED**

1.  The Creditors request that the Court order the Debtor to define the classes of claims identified in the Disclosure Statement and *Chapter 11 Plan of Reorganization of William Barrier Roberts, Debtor and Debtor-in-Possession* (Doc. 99) (the "Plan") and to identify all claimants that would fall within each class with sufficient specificity to allow the Creditors and all other parties

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them by the Disclosure Statement.

entitled to vote to accept or reject the Plan to determine whether voting to accept or reject the Plan would be in their best interest. The Creditors further object to the Disclosure Statement to the extent it contains incorrect or misleading information, including stating as fact matters that are currently the subject of pending litigation in this Court, the outcome of which could have a material impact on the feasibility of the Plan and on the Debtor's overall reorganization efforts.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference* from the United States District Court for the Northern District of Alabama, dated January 12, 1995.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are §§ 105(a) and 1125(a) of the Bankruptcy Code.

## PROCEDURAL BACKGROUND

5. On November 16, 2018, the Debtor commenced this Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (Doc. 1).

6. On February 28, 2019, the Creditors each timely filed their respective proofs of claim and amendments thereto. (*See* Claims 10–14).

7. On May 20, 2019, the Debtor filed his Disclosure Statement, asking the Court to, among other things, approve the Disclosure Statement "as containing information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor typical of the holders of claims or interests in Classes 1 and 2 to make an informed judgment whether to accept or reject the Plan." (Disc. Statement, § I.B.1.). On the same date, the Debtor filed his proposed Plan.

2

Case 18-83442-CRJ11    Doc 117    Filed 06/20/19    Entered 06/20/19 15:26:27    Desc
Main Document    Page 2 of 8

8. The Disclosure Statement and Plan create the following two classes of impaired unsecured claims against the Debtor's estate: Class 1—Allowed Unsecured Claims and Class 2—Individual Equity. (Disc. Statement, 4; Plan, § I.B.2.01).

9. Neither the Disclosure Statement nor the Plan define "Individual Equity Claims" or "Individual Equity", but the Disclosure Statement and Plan each provide that "[n]o Individual Equity payments are expected …." (Disc. Statement § V.A.3; Plan § 3.01).

10. Neither the Disclosure Statement nor the Plan identify what claimants against the Debtor's estate hold claims that fall within the proposed "Individual Equity" class of claims, to which the Debtor proposes to make no distributions under the Plan.

11. The Disclosure Statement makes the following representations:

> The primary reason for this bankruptcy arises from the mismanagement of Bullet & Barrel, LLC funds by the majority shareholder. As well as the ensuing "squeeze out" and dilution of the Debtor's Interest in Bullet and Barrel. The Debtor invested money into the business, and the majority shareholder took steps to dilute the Debtor's interest in the company. Due to mismanagement and majority oppression, the Debtor has become financially distressed.
>
> …
>
> The main reason for this bankruptcy arises from the mismanagement of Bullet & Barrel, LLC funds by the majority shareholder. The Debtor has invested money into that business and, due to mismanagement and majority oppression, the Debtor has become financially distressed.

(*Id.* at §§ II.B., III).

12. These representations are false and hotly contested, *see* (AP. Doc. 9),[2] and the Disclosure Statement does not even associate them with any disputed claims. Of course, the Creditors' claims are disputed and arise from the transactions and occurrences that are being litigated in the AP, the outcome of which could alter distributions under the Plan.

---

[2] Indeed, the Bullet & Barrel Limited Liability Company Agreement, dated August 5, 2016, expressly waives the fiduciary duties that the Debtor relies on for nearly all of the claims he asserts in the related AP No. 19-80017-CRJ (the "AP"), currently pending before this Court.

3

## BASIS FOR RELIEF

**I.   The Court should not approve the Disclosure Statement because it does not provide adequate information.**

13.     Section 1125(a) of the Bankruptcy Code requires that a disclosure statement adequately describe information essential to the ability of creditors to make informed decisions regarding their treatment under the plan and whether it is in their best interests to vote in favor of the plan. 11 U.S.C. § 1125(a)(1). "In short, a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

14.     The Disclosure Statement does not provide sufficient information when read together with the Plan to allow the Creditors, or any "hypothetical investor typical of the holders of claims or interests in the case," 11 U.S.C. § 1125(a)(1), to make an informed decision about whether the Plan is in their best interests.

      **a.   The Disclosure Statement does not identify "Individual Equity" claims or otherwise define such claims, preventing creditors from making an informed decision about whether the Plan is in their best interests.**

15.     Courts have developed the following 19-point, non-exhaustive list of the types of information that are required in a disclosure statement:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) **information relevant to the risks posed to**

4

> **creditors under the plan**; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (emphasis added).

16. These requirements are aimed at insuring that a "proposed disclosure statement does … provide information of a kind, and in sufficient detail, to enable [creditors] to make an informed judgment about the plan." *In re Feldman*, 53 B.R. 355, 358 (Bankr. S.D.N.Y. 1985).

17. If a disclosure statement lacks information sufficient to enable creditors to make an informed decision regarding the merits of a plan, then the disclosure statement cannot be approved. *Id*.

18. As a preliminary matter, the Disclosure Statement does not articulate why the Debtor proposes to divide unsecured claims against his estate into two classes, indicating that the Plan's proposed classification may very well constitute impermissible gerrymandering, *In re New Midland Plaza Associates*, 247 B.R. 877 (Bankr. S.D. Fla. 2000), rendering the Plan "so fatally flawed that confirmation is impossible." *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (citing *In re Monroe Well Service, Inc.*, 80 B.R. 324 (Bankr. E.D. Pa. 1987); *In re Pecht*, 57 B.R. 137 (Bankr. E.D. Va. 1986); *In re Kehn Ranch, Inc.*, 41 B.R. 832 (Bankr. D.S.D. 1984)).

19. While the Debtor's failure to explain this classification may provide an independent reason for the Court not to approve the Disclosure Statement, *Cardinal Congregate I*, 121 B.R. at 764, the absence of any such explanation also makes it impossible for the Creditors, as well as any other interested party, to determine whether it would be in their best interests to vote for the Plan

because no claimant has any way to know whether they would be classified under Class 1—Allowed Unsecured Claims or Class 2—Individual Equity. (Disc. Statement, 4; Plan, § I.B.2.01).

20. This distinction is of the utmost important to the holders of impaired claims against the estate because the claims of parties that the Debtor intends to classify as "Unsecured Claims" will receive "the greater of: the remainder of the disposable income of the Debtors after the payment of all administrative and tax claims; or, $2,500.00 paid by the Debtors at the completion of the Plan to the Disbursing Agent to be distributed pro rata to Allowed Unsecured Claims[,]" (Plan, § 3.01), whereas claimants holding "Individual Equity" claims will receive nothing. (*Id.*).

### b. The Disclosure Statement mischaracterizes hotly contested issues as facts, preventing creditors from making an informed decision about whether the Plan is in their best interests.

21. A disclosure statement "should inform the reader what the undisputed claims are, what the disputed claims are, what effect, if any, there will be on the distribution if disputed claims are or are not allowed, and when will distribution be made." *In re Ferretti*, 128 B.R. at 19. "This requires a total dollar amount projected for the undisputed claims, and a total dollar amount projected for the disputed claims should they be allowed over objections." *Id*.

22. The Disclosure Statement asserts that Melanie's "mismanagement and majority oppression [are the main reason for this bankruptcy.]" (Disc. Statement § II.B.). But the Disclosure Statement does not characterize these allegations or the Creditors' related claims as disputed claims, nor does it advise on what effect these claims might have on the feasibility of the Plan.

23. The Debtor's representations about the history and reasons for commencing this Case are misleading at best, and their inclusion as "facts" in the Disclosure Statement could give other creditors and interested parties a false impression about the challenges facing the Debtor, and about the Debtor's ability to consummate his Plan.

6

## CONCLUSION

For all of the foregoing reasons, the Creditors respectfully request that the Court refuse to approve the Debtor's Disclosure Statement until such time as the Debtor 1) defines the classes of claims identified in the Disclosure Statement and Plan and identify all claimants that would fall within each class with sufficient specificity to allow the Creditors and all other parties entitled to vote to accept or reject the Plan to determine whether voting to accept or reject the Plan would be in their best interest, in accordance with Bankruptcy Code § 1125(a); 2) revise the Disclosure Statement to acknowledge that the alleged reasons precipitating the Debtor's petition are hotly disputed, explaining how the Court's determination of the related AP will affect the Plan with sufficient specificity to allow the Creditors and all other parties entitled to vote to accept or reject the Plan to determine whether voting to accept or reject the Plan would be in their best interest, in accordance with Bankruptcy Code § 1125(a); and 3) grant such other and further relief as is just and proper.

Dated: June 20, 2019

<u>/s/ Christian A. Pereyda</u>
Jayna P. Lamar
Walter A. Dodgen
David R. Beasley
Christian A. Pereyda

*Attorneys for Melanie Hammer Murray, Rhett Murray, and Bullet & Barrel, LLC*

**OF COUNSEL:**

Walter A. Dodgen
David R. Beasley
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street S.W.
Huntsville, Alabama 35801
Telephone: (256) 551-0171
Facsimile: (256) 512-0119
tdodgen@maynardcooper.com
dbeasley@maynardcooper.com

Jayna P. Lamar
Christian A. Pereyda
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203
Telephone: (205) 254-1854
Facsimile: (205) 254-1999
jlamar@maynardcooper.com
cpereyda@maynardcooper.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Christian A. Pereyda
*Of Counsel*