IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERTS, WILLIAM BARRIER | ) | CASE NO. 18-83442-CRJ11 |
| SSN: XXX-XX-9314 | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |

## <u>SECOND AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF</u>
## <u>WILLIAM BARRIER ROBERTS</u>
## <u>DEBTOR AND DEBTOR-IN-POSSESSION</u>

### AUGUST 15, 2019

STUART M. MAPLES
MAPLES LAW FIRM, PC
200 Clinton Ave. W, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

Counsel for Debtor-in-Possession

**Solicitation of Votes with Respect to the Chapter 11 Plan**

of

**WILLIAM BARRIER ROBERTS**

WILLIAM BARRIER ROBERTS, DEBTOR AND DEBTOR-IN-POSSESSION (THE "DEBTOR" OR "ROBERTS"), BELIEVES THAT THE DEBTOR'S CHAPTER 11 PLAN DATED MAY 20, 2019 (THE "PLAN"), IS IN THE BEST INTERESTS OF ITS CREDITORS. ALL CREDITORS ARE PROVIDED FOR IN THIS DISCLOSURE STATEMENT. TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED, EXECUTED, AND RECEIVED BY COUNSEL FOR THE DEBTOR, STUART M. MAPLES, MAPLES LAW FIRM, PC, 200 CLINTON AVENUE WEST, SUITE 1000, HUNTSVILLE, ALABAMA, 35801, BEFORE 5:00 P.M. ON _____, **2019** (THE "VOTING DEADLINE").

**ALL CREDITORS ARE ENCOURAGED TO READ AND CONSIDER CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING THE PLAN, PRIOR TO SUBMITTING BALLOTS PURSUANT TO THIS SOLICITATION. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN, AND IS NOT INTENDED TO REPLACE CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN.**

-------------------------------------

ALL CAPITALIZED TERMS IN THIS DISCLOSURE STATEMENT NOT OTHERWISE DEFINED HEREIN HAVE THE MEANINGS GIVEN TO THEM IN THE PLAN. THE SUMMARIES OF THE PLAN AND THE OTHER DOCUMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE QUALIFIED BY REFERENCE TO THE PLAN AND SUCH OTHER DOCUMENTS THEMSELVES.

-------------------------------------

## I. INTRODUCTION.

### A. Preliminary Statement.

On November 16, 2018, William Barrier Roberts, debtor and debtor-in-possession (the "Debtor"), filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the Northern District of Alabama, Northern Division. The Debtor is managing his assets, business and financial affairs as a debtor-in-possession, subject to the supervision of the Bankruptcy Court and the provisions of the Bankruptcy Code.

As set forth in more detail below, the Plan provides that the Debtor shall be allowed to retain his assets, which are subject to certain liens and interest, of which the Debtor has agreed to pay as provided for in the Plan.

Accompanying this Disclosure Statement are copies of the following:

1.    The Order of the Bankruptcy Court dated _____, 2019, approving this Disclosure Statement and solicitation and voting procedures related to the Plan and setting the hearing on confirmation of the Plan for _____, 2019.

2.    **The Plan.**

3.    **A ballot for accepting or rejecting the Plan.**  Ballots are provided to holders of Allowed Claims in Classes 1, 2, 3 and 4 so that they may vote to accept or reject the Plan under the provisions of the Bankruptcy Code.  *See* Section I.B.2 ("Voting on the Plan") for additional information regarding ballots and voting procedures.

B.    **Plan Confirmation Process.**

1.    **Approval of Disclosure Statement.**

After notice and a hearing held on _____, by order dated _____, 2019, pursuant to § 1125 of the Bankruptcy Code, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor typical of the holders of claims or interests in Classes 1, 2, 3 and 4 to make an informed judgment whether to accept or reject the Plan.  The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

2.    **Voting on the Plan.**

(a)    <u>Who May Vote</u>.  Pursuant to § 1126 of the Bankruptcy Code, holders of Allowed Claims or Interests may vote to accept or reject the Plan, provided, however, that (i) the holders of Claims or Interests in classes that are not conclusively impaired under the Plan are presumed to have accepted the Plan and solicitation of acceptances with respect to such classes is not required, and (ii) a class is deemed not to have accepted the Plan if the Plan provides that the Claims or Interests of such class do not entitle the holders of such Claims or Interests to receive or retain any property under the Plan on account of such Claims or Interests. Accordingly, the Debtor is soliciting acceptance of the Plan only from holders of Claims or Interests in the following classes, which are "impaired" under the Plan and are entitled to accept or reject the Plan:

- Unclassified:  Administrative Expense Claims
                 Tax Claims

- Class 1 – Allowed Secured Claims
- Class 2 - Allowed Unsecured Claims
- Class 3 – Individual Equity
- Class 4 – Shannon League Roberts Domestic Support Obligations

Only Persons who hold Claims or Interests in the foregoing impaired classes are entitled to vote to accept or reject the Plan.

**THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF HOLDERS OF CLAIMS AND INTERESTS IN ALL IMPAIRED CLASSES.  THE DEBTOR RECOMMENDS THAT ALL PERSONS ENTITLED TO VOTE CAST A BALLOT TO ACCEPT THE PLAN.**

(b)     Deadline for Voting.  The Bankruptcy Court has fixed 5:00 p.m. (Central Time) on _____, as the deadline for voting.  To be counted, all ballots must be completed and received, as set forth below, before the Voting Deadline.

(c)     Voting Procedures.  Holders of Claims in Classes 1, 2, 3 and 4 should complete and sign the enclosed Ballot and deliver it by mail, hand or overnight delivery to:

Stuart M. Maples
Maples Law Firm, PC
200 Clinton Ave. W., Suite 1000
Huntsville, Alabama 35801

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED BY THE VOTING DEADLINE OF 5:00 P.M. CENTRAL TIME ON _____.  You must ensure the receipt of the ballot before the Voting Deadline.  Ballots received after the Voting Deadline will not be counted.**

(d)     Significance of Voting.  The vote for each holder of a claim in an impaired class is important.  Acceptance by each impaired class of claims is a condition to confirmation of the Plan on a consensual basis.  The Bankruptcy Code defines "acceptance" of a plan by a class of creditors as acceptance by holders of two-thirds in dollar amount and more than one-half in number of the claims of that class that actually cast ballots for acceptance or rejection of the Plan.  If a class or classes of impaired Claims does not accept the Plan, the Debtor has required confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code, which permits confirmation, notwithstanding non-acceptance by one or more impaired classes, if the Plan does not discriminate unfairly and is "fair and equitable" with respect to each non-accepting class. **THESE CALCULATIONS ARE BASED ONLY ON THE CLAIM AMOUNTS AND NUMBER OF**

**CREDITORS WHO ACTUALLY VOTE. THE VOTE OF EACH CREDITOR IS IMPORTANT.**

The Debtor will prepare and file with the Court a certification of the results of the balloting with respect to the Plan. **ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED, NOR WILL ANY BALLOTS RECEIVED BY FACSIMILE BE ACCEPTED.**

### 3. Confirmation Hearing.

Pursuant to § 1128 of the Bankruptcy Code, the Bankruptcy Court shall schedule a confirmation hearing to consider confirmation of the Plan.

At the Confirmation Hearing, the Court will (i) determine whether the requisite vote has been obtained for each Class, (ii) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, and (iv) determine whether to confirm the Plan.

Any objection to confirmation of the Plan must be in writing and filed and served as required by the Court pursuant to the Order Approving Disclosure Statement. **Specifically, all objections to the confirmation of the Plan must be served in a manner so as to be received on or before _____, 2019, at 5:00 p.m. (Central Time) by:**

    (a)    Clerk of the Court, United States Bankruptcy Court, 400 Wells Street, P.O. Box 3045, Decatur, Alabama, 35602.

    (b)    Counsel to the Debtor, Stuart M. Maples, Maples Law Firm, PC, 200 Clinton Ave. West, Suite 1000, Huntsville, Alabama, 35801; and

    (c)    Richard Blythe, Office of the Bankruptcy Administrator, 400 Wells Street, P.O. Box 3045, Decatur, Alabama, 35602.

## II. BUSINESS AND HISTORY OF DEBTOR.

### A. Overview of Debtor.

The Debtor is a minority, non-controlling member of B&B. B&B owns and operates an indoor shooting range and associated goods shop in a facility located in Huntsville, Alabama. The Debtor is also a 50% owner of Roberts, LLC, which owns real estate around B&B.

### B. History.

After watching a close friend build and operate a successful indoor shooting range facility in Carrollton, Georgia, Roberts decided to put together a business plan to build an indoor shooting range facility in Huntsville, Alabama. On August 5, 2016 the Debtor incorporated Bullet & Barrel, Inc., and was the sole shareholder of such corporate entity at

that time. Shortly thereafter, Roberts met with Dr. Rhett Murray about investing in Bullet & Barrel, Inc., and Dr. Murray ultimately agreed. On April 19, 2017, the Debtor filed a Statement of Conversion with the Alabama Secretary of State, converting Bullet & Barrel, Inc. into Bullet & Barrel, LLC ("B&B"). At about the same time, Roberts and Melanie Murray became B&B's minority and majority members and entered into a limited liability company agreement for B&B effective as of August 5, 2016. Roberts obtained funding for his minority interest in the company from funds gifted to him by his father, Roscoe Roberts, Jr., in the amount of $450,000.00 and from his mother-in-law, Charlotte Schlitter, in the amount of $150,000.00.

The Debtor alleges the primary reason for this bankruptcy arises from the mismanagement of B&B by the majority member/Sole Management Committee member, as well as the "squeeze out" and dilution of the Debtor's interest in B&B, all in breach of the majority member's/Sole Management Committee member's fiduciary duties owed to Debtor. The Debtor invested money into the business, and the Debtor alleges the majority member/Sole Management Committee member took steps to dilute the Debtor's interest in the company. The Debtor alleges that due to mismanagement and majority oppression, the Debtor has become financially distressed. The B&B majority member/Sole Management Committee member denies these allegations.

## C. Financial History.

| | |
|---|---|
| 2018 Gross Income: | $0.00 |
| 2017 Gross Income: | $139,201.00 |
| 2016 Gross Income: | $154,419.00 |

This leaves an average Gross Income of $97,873.33 from 2016–18.

## D. Assets.

A copy of Schedule A/B, which is attached hereto as <u>Exhibit 1</u>, accurately lists all assets of the Debtor.

## E. Projection of Income.

The Debtor is currently working at Madison Beverage in Madison, Alabama, and projects making the following in Gross Income from full-time employment for each of the next three (3) years as follows:

2020: $41,600
2021: $41,600
2022: $41,600

It is the best estimate of the Debtor that he will receive net income and benefits of approximately $41,600.00 per year for the projected years. The only potential for increase would be the outcome of the Adversary Proceeding.

**Monthly Disposable Income**

| | |
|---|---|
| Debtor Monthly Income | $3,467.00 |
| Total Monthly Debtor Income: | $3,467.00 |
| Monthly Household Expenses | -$2,421.00 |
| Gross Monthly Disposable Income | $1,046.00 |
| Plan Payments | -$345.00 (per month) |
| Net Monthly Disposable Income | $701.00 |

F.  **Debt Structure.**

   1.  **Administrative Expense Claims.**

   At Confirmation, the Debtor anticipates administrative expense claims allowable under the Plan by the following:

   (i)   Maples Law Firm, P.C., in the approximate amount of $30,000.00.
   (ii)  Julie Lockwood of Van Valkenburgh & Wilkinson Properties, Inc. in the amount of 6% of the sales proceeds from the sale of Debtor's marital home.
   (iii) Callahan, PC, in the approximate amount of $164,074.70.
   All Administrative Claims are Unclassified.

   2.  **Tax Claims.**
   The Debtor currently owes two <u>priority</u> tax claims:

   a.   Internal Revenue Service for 2017 individual income tax in the amount of $13,089.88.

   b.   Alabama Department of Revenue for 2017 individual income tax in the amount of $5,630.62.

   Additional taxes may also be due to other to other governmental entities. All Tax Claims are Unclassified.

3.      **Allowed Secured Claims**.

The Debtor currently has the following secured lenders:

Class 1(a) shall consist of the Allowed Secured Claim No. 8 of GMFS, LLC c/o Specialized Loan Servicing, LLC in the amount of $305,639.65.

Class 1(b) shall consist of the Allowed Secured Claim of Smart Bank in the amount of $185,000.00.

These claims are secured by the Debtor's marital residence located at 2203 Annadale Road, Huntsville, Alabama 35801. The Debtor's interest in this property is 50%. There is a significant amount of equity in the property securing the claims of GMFS, LLC c/o Specialized Loan Servicing, LLC and Smart Bank. The property is currently listed for sale and once sold, will pay off both secured creditors and still have money left in the estate.

The Plan places the Allowed Secured Claims in Classes 1(a) through 1(b). Allowed Secured Claims Classes 1(a) through 1(b) are to be paid by the Debtor.

4.      **Summary of Unsecured Debt**.

The Plan places all Allowed Unsecured Claims in Class 2. The total amount of these claims is in excess of $10,535,775.86.

The Debtor reserves all rights, claims and defenses with respect to the allowance, amount and classification of all unsecured claims. Moreover, some of the claims are disputed or unliquidated. Additional claims may be unknown to the Debtor. The Debtor reserves all rights and make no representation or warranty as to the amount of Allowed Unsecured Claims.

G.      **Potential Claims of Debtor.** The Debtor is currently pursuing a claim against Melanie Murray regarding Roberts, LLC and B&B, ownership and operation. The results of this litigation should be a significant source of funding to pay Allowed claims in this case.

## III.   EVENTS LEADING TO CHAPTER 11.

The main reason for this bankruptcy arises from the alleged mismanagement of B&B by the majority member/Sole Management Committee member. The Debtor has invested money into that business and, due to the alleged mismanagement and majority oppression, the Debtor has become financially distressed. The majority member/Sole Management Committee member denies these allegations.

## IV.  CHAPTER 11 PROCEEDINGS.

**Post-Filing Operations.**  After the Debtor filed this Chapter 11 case, the Debtor managed his assets and affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  The Debtor will file monthly reports with the Bankruptcy Court summarizing his post-filing operating results.

## V.  SUMMARY OF PLAN.

NOTE: The following is a summary of the Plan.  Read the Plan itself for a full disclosure of its contents.  The following summary is provided for convenience only and is not intended as a complete statement of the terms of the Plan.  If the summary conflicts in any way with the Plan, the terms of the Plan shall control.  **REFERENCE TO THE PLAN IS NECESSARY FOR A FULL UNDERSTANDING OF ITS TERMS.**

A.  **Overview.**  The Plan provides for the payment of secured, unsecured priority, and unsecured debt.

1.  **Classification of Claims and Interests.**  The Plan recognizes certain Unclassified Claims and places other Claims against the Debtor in the impaired classes.

2.  **Unclassified Claims.**

**Administrative Expense Claims.:**  Administrative expense claims shall consist of all administrative expense claims of the Debtor's Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code.  This class is divided into the following sub-classes:

(i)  Maples Law Firm, P.C.:  Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C. relating to the firm's representation of the Debtor in Bankruptcy.  These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim in the amount of $30,000.00 which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

(ii)  Julie Lockwood of Van Valkenburgh & Wilkinson Properties, Inc.:  Debtor retained Julie Lockwood as its Realtor for the efficient sale of certain real Property, pursuant the Order entered on July 9, 2019 [*See* Doc. 130].  These fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

(iii)  Callahan PC:  Debtor retained Callahan PC as special counsel to aid in representation of the Debtor in oppression litigation concerning his interest in B&B, pursuant to the Order entered on February 21, 2019 [*See*

Doc. 54]. These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim in the amount of $164,074.70 which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

**Tax Claims.**

(i) <u>IRS</u>: The IRS asserts a Priority Claim of $13,089.88 for the Debtor's 2017 individual income taxes.

(ii) <u>Alabama Department of Revenue</u>: The Alabama Department of Revenue asserts a Priority Claim of $5,630.62 for the Debtor's 2017 individual income taxes.

3. <u>**Classified Claims.**</u>

**Class 1 – Allowed Secured Claims.**

Class 1(a) shall consist of the Allowed Secured Claim No. 8 of GMFS, LLC c/o Specialized Loan Servicing, LLC in the amount of $305,639.65.

Class 1(b) shall consist of the Allowed Secured Claim of Smart Bank in the amount of $185,000.00.

These claims are secured by the Debtor's marital residence located at 2203 Annadale Road, Huntsville, Alabama 35801. The Debtor's interest in this property is 50%. There is a significant amount of equity in the property securing the claims of GMFS, LLC c/o Specialized Loan Servicing, LLC and Smart Bank. The property is currently listed for sale and once sold, will pay off both secured creditors and still have money left in the estate.

**Class 2 -Allowed Unsecured Claims.**

Class 2 shall consist of the Allowed Unsecured Claims of all other unsecured creditors.

**Class 3 – Individual Equity.**

Class 3 shall consist of Individual Equity Claims of the Debtor. No payment will be made unless all Allowed Unsecured Claims are paid in full. No Individual Equity payments are expected at this time other than Debtor's monthly household expenses, which are attached hereto as Exhibit 2.

**Class 4 – Shannon League Roberts Domestic Support Obligations.**

Class 4 shall consist of the domestic support obligations to Shannon League Roberts arising from the Divorce Proceedings filed in Madison County Circuit Court Case No. DR-2018-900823; *Shannon Roberts v. William B. Roberts.* Settlement discussions are ongoing, but no resolution has been reached at this time.

B. **Treatment of Impaired Classes.** The treatment of all claims and interests shall be in accordance with the Plan.

1. **UNCLASSIFIED CLAIMS.**

    a. **Administrative Expense Claims.** This class shall consist of all administrative expense claims of the Debtor's Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code. This class is divided into the following sub-classes:

    (i) <u>Maples Law Firm, P.C.</u>: Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C., relating to the firm's representation of the Debtor in Bankruptcy in the amount of $30,000.00. These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

    (ii) <u>Julie Lockwood of Van Valkenburgh & Wilkinson Properties, Inc.</u>: Debtor retained Julie Lockwood as its Realtor for the efficient sale of certain real Property, pursuant the Order entered on July 9, 2019 [*See* Doc. 130]. These fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

    (iii) <u>Callahan PC</u>: Debtor retained Callahan PC as special counsel to aid in representation of the Debtor in oppression litigation concerning his interest in B&B, pursuant to the Order entered on February 21, 2019 [*See* Doc. 54]. These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim in the amount of $164,074.70 which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

    b. **Tax Claims.**

    (i) <u>IRS</u>: The IRS asserts a Priority Claim of $13,089.88. The Allowed Priority Claim of the IRS shall be paid in the sixty (60) equal monthly installments, commencing sixty (60) days after the Effective Date

of the Plan. Payment on the IRS Tax Claim shall be $241.00 per month, at 4% interest, per annum.

During the pendency of the repayment period for the pre-petition tax debt owed to the IRS, in the event the Debtors fail to remit any monthly payment on the IRS unsecured priority claim as each payment becomes due; or, timely file any and all post-petition federal income tax returns by the due date for each respective tax period including any extensions and pay the taxes due on the return; the automatic stay will be considered terminated and the IRS may proceed with its legal and/or administrative remedies to collect any and all sums due on its amended claim and any post-petition liability.

(ii)    <u>Alabama Department of Revenue</u>:    The Alabama Department of Revenue asserts a Priority Claim of $5,630.62. The Allowed Priority Claim of the Alabama Department of Revenue shall be paid in the sixty (60) equal monthly installments, commencing sixty (60) days after the Effective Date of the Plan. Payment on the Alabama Department of Revenue Tax Claim shall be $104.00 per month, at 4% interest, per annum.

2.    **<u>CLASSIFIED CLAIMS.</u>**

**Class 1 –Secured Claims.**

Class 1(a) shall consist of the Allowed Secured Claim No. 8 of GMFS, LLC c/o Specialized Loan Servicing, LLC in the amount of $305,639.65

Class 1(b) shall consist of the Allowed Secured Claim of Smart Bank in the amount of $185,000.00.

These claims are secured by the Debtor's marital residence located at 2203 Annadale Road, Huntsville, Alabama 35801. The Debtor's interest in this property is 50%. There is a significant amount of equity in the property securing the claims of GMFS, LLC c/o Specialized Loan Servicing, LLC and Smart Bank. The property is currently listed for sale and once sold, will pay off both secured creditors and still have money left in the estate.

**Class 2 -Unsecured Claims.**

Class 2 shall consist of the Allowed Unsecured Claims of all other unsecured creditors. The Allowed Unsecured Claims of the unsecured creditors will be paid from the remainder of the disposable income of the Debtor after the payment of all administrative and tax claims for sixty (60) months after the Effective Date of the Plan.

**Class 3 – Individual Equity.**

Class 3 shall consist of Individual Equity Claims of the Debtor. No payment will be made unless all Allowed Unsecured Claims are paid in full. No Individual Equity payments are expected at this time other than the Debtor's monthly household expenses. *See* Exhibit 2.

**Class 4 – Shannon League Roberts for Domestic Support Obligations.**

Class 4 shall consist of the domestic support obligations to Shannon League Roberts arising from the divorce proceedings filed in Madison County Circuit Court Case No. DR-2018-900823; *Shannon Roberts v. William B. Roberts.*

C.     **Implementation of the Plan.**

        1.     **Treatment of Executory Contracts and Unexpired Leases.** The Debtor has no Executory Contracts or Unexpired Leases.

        2.     **Means of Execution of The Plan.** The Plan will be funded by the operations of the Debtor.

        3.     **Management.** The Debtor shall continue to manage his affairs.

        4.     **Creditor's Committee.** No creditor's committee was formed in this matter. Operating reports will continue and shall be available to the creditors until the Plan is substantially consummated and the case is closed.

        5.     **Disbursing Agent.** William Barrier Roberts shall be the Disbursing Agent.

        6.     ***De Minimis* Distributions.** Notwithstanding anything to the contrary contained in the Plan, the Debtor shall not be required to transmit Cash to the holder of an Allowed Claim in an impaired class of claims if the amount of Cash otherwise due is less than $10.00. All Cash not so distributed shall be deposited into the Unpaid Claims Reserve, and such Cash shall become the sole and exclusive property of the Debtor.

D.     **Provisions Governing Distributions.**

        1.     **Procedure for Determination of Claims.**

                a.     Objections to Claims. Notwithstanding the occurrence of the Confirmation Date, and except as to any Claim that has been Allowed prior to such date or pursuant to this Plan, the Debtor, or any other Person authorized under § 502(a) of the Bankruptcy Code, may object to the allowance of any Claim against the Debtor or seek estimation thereof on any grounds permitted by the Bankruptcy

Code; provided, however, that after the Effective Date the Bankruptcy Court shall have exclusive authority and responsibility to prosecute objections to Claims.

b.     <u>Disputed Claims</u>. Payments or Distributions under the Plan on account of disputed claims shall be held in reserve pending the allowance or disallowance of the Claim. To the extent any property is distributed to an entity on account of a Claim that is not an Allowed Claim, such property shall promptly be returned to the Disbursing Agent for deposit in the Unpaid Claims Reserve. To the extent that a disputed claim ultimately becomes an Allowed Claim, payments and distributions on account of such Allowed Claim shall be made in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Code allowing such Claim becomes a Final Order, any property held in reserve as pursuant to the Plan that would have been distributed prior to the date on which a disputed claim becomes an Allowed Claim shall be distributed, together with any dividends, payments or other distributions made on account of such property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

## E.     Distributions.

**1.**     **<u>Undeliverable Distributions</u>.** Except as otherwise provided herein, distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth on the respective proofs of Claim filed by such holders; (b) at the addresses set forth in any written notice of address change delivered to the Debtor after the date of the filing of any related proof of Claim; or (c) at the address reflected in the Schedules or the Debtor's records if no proof of Claim has been filed and if the Debtor have not received written notice of a change of address, as set forth herein. If a distribution is returned as undeliverable, the maker of such distribution shall hold such distribution and shall not be required to take any further action with respect to the delivery of the distribution unless and until the earlier of (1) the date on which Debtor is notified in writing of the then current address of the holder entitled to receive the distribution or (2) within six (6) months from the first payment due on the Unsecured Claims, except as the Bankruptcy Court may otherwise order. If the Disbursing Agent is notified in writing of the then current address of the holder before the expiration of the six (6) month period, the Disbursing Agent shall promptly make the distribution required by the Plan to the holder at the then current address. If the Disbursing Agent is not so notified by the end of the six (6) month period, and the holder of the Claim does not by such date assert a right to such undeliverable distribution, the holder shall be forever barred from asserting a Claim to such undeliverable distribution, which shall become available for distribution to holders of other Allowed Claims as provided in the Plan.

**2.**     **<u>Manner of Payment</u>.** Distributions by the Disbursing Agent may be made, at the option of the Disbursing Agent, in cash, by wire transfer or by check drawn on such accounts established by the Disbursing Agent as necessary to effectuate the Plan.

**3.** **Interest.** Unless otherwise required by Final Order of the Bankruptcy Court or applicable bankruptcy law, interest shall not accrue or be paid after the Filing Date on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Filing Date on any Claim.

**4.** **Fractional Dollars; *De Minimis* Distributions.**

a.      Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

b.      No interim distribution will be made on account of any Allowed Class 1 Claim to the holder of any such Allowed Class 1 Claim if the amount of such distribution for the Allowed Claim is less than $25.00.  Immediately before the last distribution date on Unsecured Claims, the Disbursing Agent shall (i) aggregate the amount of all distributions that would have been made on account of an Allowed Claim but for this *de minimis* provision and (ii) on the last distribution date, make a distribution on account of such Allowed Claim in accordance with the Plan.

**5.** **Distributions on Claims Allowed Pursuant to Section 502(h) of the Bankruptcy Code.** Except as otherwise provided in the Plan, no distributions shall be made on account of a Claim arising as a result of a Final Order entered in an avoidance action until such Claim becomes an Allowed Claim.  Any Claim that is allowed pursuant to § 502(h) of the Bankruptcy Code prior to the first distribution date as a result of the entry of a Final Order in any avoidance action will be treated in accordance with the provisions of the Plan.  All holders of such Claims that become Allowed Claims after the first distribution date will receive an initial distribution on the distribution date next following the date on which their Claim becomes an Allowed Claim and shall receive subsequent distributions, if any, in accordance with the provisions of the Plan.  Distributions under the Plan on account of anticipated Claims that may arise or become allowable as a result of the entry of a Final Order in any avoidance action that are not Allowed Claims as of the first distribution date may be held in reserve, at the discretion of the Disbursing Agent, pending the allowance of disallowance of such Claims.

**6.** **Disbursing Agent's Compliance with Tax Requirements.** In compliance with § 346 of the Bankruptcy Code, to the extent applicable, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making distributions pursuant to the Plan.  The Disbursing Agent shall be authorized to take any and all action necessary and appropriate to comply with such requirements.  As a condition to making any distribution under the Plan, the Disbursing Agent may require the holder of an Allowed Claim to provide such holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting and withholding laws. Notwithstanding any other provision of this Plan, each entity receiving a distribution of dash pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction

and payment of tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of any such distribution.

       7.    **Reserve for Disputed Claims.**  Except as otherwise provided in the Plan, no distributions shall be made on account of a disputed claim until such claim becomes an Allowed Claim. In making any distribution on Allowed Claims, the Disbursing Agent shall calculate the amount of such distribution (for purposes of making a Pro Rata calculation) as if each disputed claim were an Allowed Claim, unless the Bankruptcy Court enters an order specifying that the disputed claim should be treated as being a different amount for purposes of such calculation. The Disbursing Agent shall reserve from distributions a sufficient amount to make a distribution on a disputed claim in the event it becomes an Allowed Claim (unless the Bankruptcy Court orders otherwise). To the extent a disputed claim is allowed pursuant to a Final Order, any reserves attributable to the disallowed portion of the disputed claim shall be distributed on account of Allowed Claims pursuant to the terms of the Plan.

       8.    **Setoffs.**  Subject to § 553 of the Bankruptcy Code, in the event the Debtor has a claim of any nature whatsoever against a holder of a Claim, the Disbursing Agent may, but is not required to, set off the Debtor's claim against such Claim (and any distributions or other rights to receive property arising out of such Claim under the Plan) unless any such claim of the Debtor is or will be released under the Plan. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any claim of the Debtor.

       9.    **Reliance on Claims Register.**  In making distributions under the Plan, the Disbursing Agent may rely upon the accuracy of the claims register maintained by the Bankruptcy Court or its designee as claims agent in the case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

**F.    Reservation of the Rights of the Estate.**

All claims, rights to payment, causes of action, cross-claims and counterclaims of the Debtor of any kind or nature whatsoever including, without limitation, causes of action and avoidance actions, against third parties arising before the Confirmation Date that have not been disposed of prior to the Effective Date shall be preserved and treated in accordance with the Plan. Without limitation of the foregoing, pursuant to § 1123(b) of the Bankruptcy Code, the Debtor shall enforce, for the benefit of the holders of Allowed Class 3 Claims (a) the causes of action and avoidance actions; (b) all Claims, causes of action, and related recoveries against any person; and (c) all other claims, rights to payment and causes of action, cross claims and counterclaims of any nature or type whatsoever, at law or in equity, against any person.

**VI.    TAX CONSEQUENCES OF PLAN.**

The following summary discusses the material federal income tax consequences expected to result from the consummation of the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code'), applicable Treasury Regulations,

judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"). There can be no assurance that the IRS will not take a contrary view, and no ruling from the IRS has been or will be sought by the Debtor or his advisors. Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to, among others, the Debtor and the holders of Claims.

The following summary is for general information only. The federal income tax consequences of the Plan are complex and subject to significant uncertainties. This summary does not address foreign, state or local tax consequences of the Plan, nor does it purport to address all of the federal income tax consequences of the Plan. This summary does not purport to address the federal income tax consequences of the Plan to taxpayers subject to special treatment under the federal income tax laws, such as broker-dealers, tax-exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and non-resident alien individuals. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL OR FOREIGN TAX CONSEQUENCES OF THE PLAN.

### A.      Federal Income Tax Consequences to the Debtor.

NOTHING STATED IN THE DISCUSSION WHICH FOLLOWS IS OR SHOULD BE CONSTRUED AS TAX ADVICE TO ANY CREDITOR OF THE DEBTOR. CREDITORS SHOULD CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN.

The statements contained in this portion of the Disclosure Statement are based on existing provisions of the Internal Revenue Code of 1986, as amended ("Code"), Treasury Regulations promulgated thereunder, existing court decisions, published Revenue Rulings, Revenue Procedures and Technical Information Releases of the Internal Revenue Service ("IRS":), and legislative history. Any changes in existing law may be retroactive, may affect transactions commenced or completed prior to the effective date of the changes, and may significantly modify this discussion.

Legislation may be introduced in future sessions of Congress which could eliminate or alter some of the anticipated tax results of the Plan. No attempt has been made to evaluate in any detail the impact, which may be substantial, of any proposed legislation on the Plan.

The following is intended to be only a summary of certain tax considerations under current law which may be relevant to the creditors of the Debtor. It is impractical to set forth in this Disclosure Statement all aspects of federal, state, and local tax law which may have tax consequences to the Debtor and his creditors.

Some of the tax aspects discussed herein are complex and uncertain. Moreover, the discussion below is necessarily general, and the full tax impact of the Plan upon the creditors will

vary depending upon each creditor's individual circumstances. Therefore, all the creditors should satisfy themselves as to the federal, state and local tax consequences of the Plan by obtaining advice solely from their own advisors.

THE CREDITORS SHOULD NOT CONSIDER THE DISCUSSION WHICH FOLLOWS TO BE A SUBSTITUTE FOR CAREFUL, INDIVIDUAL TAX PLANNING AND ARE EXPRESSLY CAUTIONED THAT THE INCOME TAX CONSEQUENCES TO THE CREDITORS ARE COMPLEX AND VARY CONSIDERABLY DEPENDING UPON EACH PARTY'S CIRCUMSTANCES. ACCORDINGLY, CREDITORS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS WITH REGARD TO THEIR PARTICULAR TAX SITUATIONS.

1.  **The Plan.** The terms of the Plan provide for payment provisions which should be analyzed individually for each Creditor with its tax advisor.

2.  **Creditors.**

    a.  To the extent that Creditors receive payments under the Plan as interest, such Creditors will recognize interest income under § 51(a)(4) of the Code.

    b.  To the extent that, pursuant to the Plan, creditors receive cash payments from the Debtor in satisfaction of their claims, such creditors may recognize gain or loss, as the case may be, equal to the difference between the amount of the cash so received and their adjusted basis in such claim.

    c.  The gain or loss to be recognized by such creditors will be either ordinary income or capital gain depending on, among other factors, the status of the creditor and the nature of Claim in the hands of the creditor. While capital gains and ordinary income are presently taxed at the same rates, §§ 1211 and 1212 of the Code, limit the ability to offset net capital losses against ordinary income.

3.  **Bad Debt Deduction.** Section 166 of the Code permits the deduction of debts which have become totally or partially worthless. Therefore, to the extent that certain creditors will receive less than full payment from the Debtor with respect to the debt owed such creditors, such creditors may be able to deduct such bad debts for federal income tax purposes. The nature of the deduction for a bad debt depends on its classification as either a business or non-business debt. For non-corporate taxpayers, non-business bad debts are deductible as short-term capital losses, and so are subject to the limitations on deductibility of capital losses under §§ 1211 and 1212 of the Code. Business bad debts and bad debts held by corporate taxpayers are deductible as ordinary losses. A bad debt is deductible to a creditor at the time it becomes wholly or partially worthless determined under the particular facts and circumstances.

**4.    Income from the Discharge of Indebtedness.**    As a general rule, § 61(a)(12) of the Code, requires that gross income for federal income tax purposes include income from the discharge of indebtedness.  However, § 108(a)(1) of the Code, specifically excludes discharge of indebtedness income from gross income if the discharge occurs in a Title 11 (bankruptcy) case.   Therefore, the Debtor will not recognize income on the discharge of indebtedness pursuant to the Plan.

Section 108(b) of the Code does, however, provide that the amount excluded from gross income under § 108(a)(1) must be applied to reduce, in order, the following tax attributes of the Debtor: (a) net operating losses and net operating loss carryovers; (b) general business credits; (c) capital loss carryovers; (d) the basis of the property of the taxpayer (but not below the aggregate liabilities of the taxpayer after the discharge, pursuant to § 1017(b)(2) of the Code); and (e) foreign tax credit carryovers.

Alternatively, the Debtor may elect, under § 108(b)(5) of the Code, to apply any portion of the reduction referred to above to a reduction of the taxpayer's basis in depreciable property and real estate held for sale in the ordinary course of business.

The effect of the reduction of tax attributes is to defer the recognition of income on the discharge of indebtedness income until such time as the reduced tax attribute would have otherwise been available to the Debtor to decrease taxable income.

**5.    State and Local Taxes.**    In addition to the federal income tax consequences described above, Creditors should consider potential state and local tax consequences which are not discussed herein.   In general, the State of Alabama imposes a tax against income of residents and non-residents of Alabama who have income from sources within the state of Alabama.   The Alabama income tax is imposed on taxable income at a graduated rate of up to five percent (5%).

THE FOREGOING ANALYSIS IS NOT INTENDED TO BE A SUBSTITUTE FOR CAREFUL TAX PLANNING, PARTICULARLY SINCE CERTAIN OF THE INCOME TAX CONSEQUENCES OF THE PLAN WILL NOT BE THE SAME FOR ALL CREDITORS, DUE TO THEIR RESPECTIVE DIFFERING SOURCES AND TYPES OF INCOME AND DEDUCTIONS, AND OTHER FACTORS. ACCORDINGLY, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS WITH REFERENCE TO THEIR OWN TAX SITUATION.

## VII.   PLAN CONFIRMATION PROCESS.

### A.    Confirmation.

At the Confirmation Hearing, the Bankruptcy Court shall confirm the Plan if the Plan satisfies all requirements of § 1129(a) include the following: (1) the Plan must be accepted by all impaired classes, (2) the Plan must be feasible, and (3) with respect to each holder of a Claim or Interest that does not vote to accept the Plan (even if such holder is a member of a Class that as a whole votes to accept the Plan), the Plan must be in the "best interest" of such holder in that the

Plan provides for a distribution to the holder that is not less than the amount such holder would receive in a hypothetical Chapter 7 liquidation of the Debtor. With respect to the requirement that each impaired class votes to accept the Plan, § 1129(b) provides that if all other requirements of § 1129(a) are satisfied, the Plan still may be confirmed if the Plan, with respect to each impaired class that does not accept the Plan, "does not discriminate unfairly" and is "fair and equitable" with respect to such class. The acceptance, feasibility, unfair discrimination and fair and equitable concepts are discussed in more detail below.

### B. Acceptance of Plan by Voting.

For the Plan to be accepted by an impaired class of claims, it must be accepted by holders of Claims in such Class that hold at least two-thirds in dollar amount and one-half in number of the Claims in such Class held by creditors that actually vote. A Class is impaired if the legal, equitable, or contractual rights of the members of such class are modified or altered by the Plan (with an exception, not applicable to the Plan, for curing defaults, reinstating maturity and compensating certain damages). Classes 1, 2, 3 and 4 in this Plan are impaired and entitled to vote.

If any impaired Class does not accept the Plan, and at least one impaired Class accepts the Plan, the Debtor may seek confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code. To obtain confirmation despite non-acceptance by one or more impaired Classes, the Debtor must show to the Bankruptcy Court that the Plan does not discriminate unfairly and is fair and equitable with respect to each such Class. Each of these requirements is discussed further, as follows:

       1.    **<u>Unfair Discrimination</u>.** A plan does not discriminate unfairly with respect to a non-accepting Class if it protects the rights of such Class in a manner consistent with the treatment of other Classes with similar rights. The unfair discrimination test does not require that similarly situated Classes be treated in exactly the same way. The test requires that such Classes be treated substantially similarly *or* if not treated substantially similarly, that differences in treatment be fair.

       2.    **<u>Fair and Equitable</u>.** A plan does not discriminate unfairly if either (a) each holder of a Claim or Interest in the non-accepting Class receives or retains under the Plan property of a value equal to the Allowed amount of such Claim or Interest; or (b) the holders of Claims or Interests that are junior to such Class receive or retain nothing under the Plan on account of such Claims or Interests (the "Absolute Priority Rule").

### C. Feasibility.

As a condition to confirmation of the Plan, § 1129(a) of the Bankruptcy Code requires that Confirmation is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization. The Plan provides for reorganization of the Debtor's assets. The Debtor is not likely to need further financial reorganization. Accordingly, the Plan is feasible, and the Debtor can demonstrate that the Plan is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization of the Debtor.

**D.    Best Interest of Creditors Test.**

      **1.    Overview.**  Confirmation requires that each holder of an Allowed Claim and Interest that is included in an Impaired Class (a) accept the Plan or (b) receive or retain under the Plan, property of a value, as of the Effective Date of the Plan, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  This requirement applies to all dissenting or non-voting members of impaired Classes, even with respect to a Class that has accepted the Plan.

      To determine what holders of Claims and Interests would receive in a hypothetical Chapter 7 liquidation, the Bankruptcy Court will consider the dollar amount that would be generated in a straight liquidation of the Debtor's assets and properties.  Such amount would be reduced by the costs and expenses of liquidation by additional administrative expense claims that would accrue in Chapter 7.  Chapter 7 costs and expenses would include, without limitation, (a) statutory fees payable to the Chapter 7 trustee pursuant to § 326 of the Bankruptcy Code; (b) fees payable to attorneys, accountants, auctioneers, liquidators and other professional advisors that the Chapter 7 Trustee would engage to assist in discharging his duties under the Bankruptcy Code; and (c) any unpaid expenses incurred by the Debtor during the case, such as unpaid vendor invoices and fees and reimbursement of expenses of attorneys, accountants and other professional advisors retained by the Debtor or statutory committees or any party asserting a substantial contribution claim under § 503(b)(3) of the Bankruptcy Code.

      Based on the foregoing, holders of Allowed Claims in Class 1 would likely receive no distributions.  The Plan also provides for payment of priority and administrative claims that would be payable from the proceeds of causes of action before any distribution to Unsecured Claims.  The Plan, therefore, provides for distributions not less than the value that such holders would receive in Chapter 7.

      Accordingly, the Plan meets the best interests of creditors test with respect to all holders of Claims and interests.  The Debtor believes the Plan will maximize the potential return to all parties in interest.

      There are no known avoidance actions.

      Based on the foregoing, the Debtor has concluded that reorganization under the Plan will result in a greater distribution to holders of all classes than liquidation through Chapter 7.

**VIII.    ALTERNATIVES TO PLAN.**

      As an alternative to confirming the Plan, the Bankruptcy Court could convert the Case to a case under Chapter 7 of the Bankruptcy Code, dismiss the Case, or consider another Chapter 11 plan.

### A.      Liquidation under Chapter 7.

If the Plan is not confirmed, and no other alternative plan is proposed, the Bankruptcy Court could find cause to convert the Case to a case under Chapter 7 of the Bankruptcy Code.  In Chapter 7, a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to the Debtor's creditors in accordance with the priorities established by the Bankruptcy Code.

The Debtor believes that conversion of the Case to a case under Chapter 7 of the Bankruptcy Code would result in lower distributions to all Creditors.  Substantially all assets of the Debtor, with the exception of the avoidance actions, are subject to liens of the holders of Secured Claims (the "Secured Parties").  In a chapter 7 case, the Secured Parties likely would be able to obtain relief from automatic stay under § 362(d) to foreclose on its liens.  In this event, essentially no assets, other than avoidance actions, would remain to satisfy the claims of creditors other than the Secured Parties.

As disclosed on the Debtor's Summary of Assets and Liabilities, a copy of which is attached hereto as Exhibit 3, total assets of the Debtor totals $480,400.00, and total liabilities are $6,264,790.67.  There is no unencumbered equity in any asset.

Conversion to Chapter 7 would result in a No Asset Case.

Based on the foregoing, the Debtor believes that holders of Claims and Interests would receive a lower distribution on account of such Claims and Interests if the Case were converted to Chapter 7.

### B.      Comparison of Plan.

The Debtor is of the opinion that the proposed Plan provides more for each class of creditors and represents the statutorily mandated payment of priority claims.

### C.      Dismissal of Case.

Dismissal of the Case likely would have a disastrous result on the value of the Debtor's assets and the return to holders of Claims and Interests.  Without limitation, dismissal of the Case would leave the Debtor without sufficient funding to preserve assets pending his liquidation.  Dismissal also would terminate all means for the repayment of Unsecured Creditors under the Plan.  Accordingly, dismissal of the case would drastically reduce the value of the Debtor's assets, would lower the return to the Secured Creditors and essentially would eliminate any return to holders of other Claims and Interests.  The Debtor believes that dismissal of the case is not a viable alternative to the Plan.

**Alternative Chapter 11 Plan.**

If the Plan is not confirmed, the Debtor and other parties in interest, including, without limitation, holders of Claims and Interests and any official statutory committee, could propose an alternative plan. The Debtor believes, however, that the Plan will provide the greatest and most expeditious return to holders of Claims and Interests. Because the Claims of the Secured Parties exceed the expected liquidation value of the Debtor's assets, an alternative plan would not likely provide for any distributions to parties other than the Secured Parties. The formulation, negotiation and confirmation of an alternative plan also would delay significantly the administration of the Debtor's case and would have a negative impact on the Debtor's ability to reorganize. Under the circumstances, the Debtor submits that confirmation of an alternative plan is unlikely on terms and conditions as favorable to holders of Claims and Interests as those in the Plan.

## IX. CONCLUSION/RECOMMENDATION.

Based on the foregoing, the Debtor believes that the Plan is the best alternative to maximize the value of the Debtor's assets and to maximize the return to creditors and equity security holders. The Debtor believes confirmation of the Plan is in the best interests of all parties in interest in the Case.

The Debtor recommends that all parties entitled to cast ballots vote to ACCEPT the Plan.

Respectfully submitted August 15, 2019.

Debtor and Debtor-in-Possession

/s/ William Barrier Roberts
WILLIAM BARRIER ROBERTS

/s/ Stuart M. Maples
STUART M. MAPLES
(ASB-1974-S69S)

MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a copy of the foregoing document was served on the following by the method listed below on August 15, 2019.

Richard Blythe
Bankruptcy Administrator
P.O. Box 3045
Decatur, AL   35602
Via email:  richard_blythe@alnba.uscourts.gov

All parties requesting notice via ECF

Via U.S. Mail to all creditors on matrix

*/s/ Stuart M. Maples*
Stuart M. Maples

```
Label Matrix for local noticing          Advantage Funding Commercial Capital Corp.    Bank Independent
1126-8                                    Engel, Hairston & Johanson, P.C.             c/o Cindy Slate Cook
Case 19-81116-CRJ11                       c/o Alto Lee Teague, IV                      PO Box 1344
NORTHERN DISTRICT OF ALABAMA              P.O. Box 11405                               Decatur, AL 35602-1344
Decatur                                   Birmingham, AL 35202-1405
Thu Aug 15 15:14:41 CDT 2019

Just For You Coach, Inc.                  U. S. Bankruptcy Court                       *Advantage Funding Commercial Capital Co.
1725 Walls Lane NE                        400 Well Street                              c/o Alto Teague
Hartselle, AL 35640-5933                  P. O. Box 2775                               P.O. Box 11405
                                          Decatur, AL 35602-2775                       Birmingham, AL 35202-1405


*Internal Revenue Service                 *McCarthy, Burgess & Wolfe                   *McGriff Tire
P.O. Box 7346                             26000 Cannon Rd.                             1625 County Road 437
Philadelphia, PA  19101-7346             Cleveland, OH 44146-1807                     Good Hope, AL 35055-1215


*Secretary of the Treasury                *U.S. Securities and Exchange Commission     *United States Attorney
1500 Pennsylvania Ave., NW                Regional Director, Branch of Reorganizat     Northern District of Alabama
Washington, DC 20220-0001                 Atlanta Regional Office, Suite 900           1801 Fourth Avenue North
                                          950 East Paces Ferry Road                    Birmingham, AL 35203-2101
                                          Atlanta, GA 30326-1180


*United States Attorney General           *United States Bankruptcy Administrator      Bank Independent
U.S. Department of Justice                 Northern District of Alabama                 Hartselle Branch
950 Pennsylvania Avenue, NW                1800 Fifth Avenue North                      PO Box 5000
Washington DC 20530-0001                   Birmingham, AL 35203-2111                    Sheffield, Al 35660-0137


Bank Independent                          Bank Independent                             CIT Bank
PO BOX 5000                               PO Drawer B                                  155 Commerce Way
Sheffield, AL 35660-0137                  Sheffield, AL 35660                          Portsmouth, NH 03801-3243


CIT Bank, N.A.                            Internal Revenue Service                     Joyce White Vance
c/o Andrew J. Shaver                      Centralized Insolvency Operations            US Attorney General
Bradley Arant Boult Cummings LLP          PO Box 7346                                  1801 4th Ave North
1819 Fifth Avenue North                   Philadelphia, PA 19101-7346                  Birmingham, AL 35203-2101
Birmingham, AL 35203-2120


Loretta Lynch US Attorney General         Luther Strange                               McGriff Industries, Inc.McGriff Tire
US Dept. of Justice                       Alabama Attorney General                     c/o Lynne Ponder
950 Pennsylvania Ave NW                   PO Box 300152                                P.O. Box 1148
Washington, DC 20530-0009                 Montgomery, AL 36130-0152                    Cullman, AL 35056-1148


State of Alabama                          Richard M Blythe                             Stuart M Maples
Department of Revenue Legal Division      United States Bankruptcy Administrator        Maples Law Firm, PC
PO Box 320001                             PO Box 3045                                  200 Clinton Avenue W.
Montgomery, AL 36132-0001                 Decatur, AL 35602-3045                       Suite 1000
                                                                                       Huntsville, AL 35801-4919
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)CIT BANK, N.A.              End of Label Matrix
                              Mailable recipients    26
                              Bypassed recipients     1
                              Total                  27
```

EXHIBIT 1

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **William Barrier Roberts** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF ALABAMA | | |
| Case number | 18-83442-CRJ-11 | | |

☐ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

☑ Yes. Where is the property?

**1.1**

**2203 Annadale Rd SE**
Street address, if available, or other description

**Huntsville**    **AL**    **35801-0000**
City     State     ZIP Code

**Madison**
County

**What is the property?** Check all that apply

☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $468,500.00 | $468,500.00 |

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ **Check if this is community property**
(see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.....................................................................=>**

| |
|---|
| $468,500.00 |

### Part 2: Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

**EXHIBIT 1**

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| | | | |
|---|---|---|---|
| 3.1 | Make: | **GMC** | |
| | Model: | **Sierra** | |
| | Year: | **2014** | |
| | Approximate mileage: | **108,000** | |
| | Other information: | | |

Location: 2115 Big Cove Rd., Huntsville AL 35801

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$8,500.00** | **$8,500.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here...........................................................................=>

| |
|---|
| **$8,500.00** |

| **Part 3:** | **Describe Your Personal and  Household Items** |
|---|---|

**Do you own or have any legal or equitable interest in any of the following items?**

Current value of the portion you own?
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

| Location: 2115 Big Cove Rd., Huntsville AL 35801 | $100.00 |
|---|---|

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ■ No
   ☐ Yes. Describe.....

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ■ No
   ☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ■ No
   ☐ Yes. Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes. Describe.....

Case 18-83442-CRJ11    Doc 54    Filed 08/15/18    Entered 08/15/18 15:07:50    Desc Main
Document      Page 28 of 35

EXHIBIT 1

Debtor 1    **William Barrier Roberts**                                    Case number *(if known)* 18-83442-CRJ-11

11. **Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
■ Yes.  Describe.....

| Location: 2115 Big Cove Rd., Huntsville AL 35801 | $300.00 |
|---|---|

12. **Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
■ No
☐ Yes.  Describe.....

13. **Non-farm animals**
*Examples:* Dogs, cats, birds, horses
■ No
☐ Yes.  Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
■ No
☐ Yes.  Give specific information.....

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ............................................................................

| $400.00 |
|---|

**Part 4:**  **Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

16. **Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
■ No
☐ Yes.................................................................................

17. **Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes........................          Institution name:

| 17.1.  **Checking** | **PNC** | $3,000.00 |
|---|---|---|

18. **Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
■ No
☐ Yes..................          Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
☐ No
■ Yes.  Give specific information about them...................

| Name of entity: | % of ownership: | |
|---|---|---|
| **Bullet & Barrel** | **49** % | Unknown |
| **Roberts LLC** | **50** % | Unknown |

Official Form 106A/B                           Schedule A/B: Property                                        page 3

| | | | |
|---|---|---|---|
| **WBR. Inc.** | **50%** | % | **Unknown** |
| **Tennessee Valley Fence, Inc.** | **11%** | % | **Unknown** |
| **McCurry Roberts** | **33.33** | % | **Unknown** |
| **RBO, LLC** | **33.33** | % | **Unknown** |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

   ■ No
   ☐ Yes. Give specific information about them
                   Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

   ■ No
   ☐ Yes. List each account separately.
                Type of account:            Institution name:

22. **Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

   ■ No
   ☐ Yes. .....................
                Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

   ■ No
   ☐ Yes.............      Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

   ■ No
   ☐ Yes.............      Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

   ■ No
   ☐ Yes.  Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

   ■ No
   ☐ Yes.  Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

   ■ No
   ☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**

   ■ No
   ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No
☐ Yes. Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No
☐ Yes. Name the insurance company of each policy and list its value.

|  | Company name: | Beneficiary: | Surrender or refund value: |
| --- | --- | --- | --- |

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No
☐ Yes. Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☐ No
■ Yes. Describe each claim.........

| Claim against Melanie and Rhett Murry involing Bullet and Barrel & Roberts, LLC | Unknown |
| --- | --- |

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

■ No
☐ Yes. Describe each claim.........

**35. Any financial assets you did not already list**

■ No
☐ Yes. Give specific information..

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here....................................................................................................................

| $3,000.00 |
| --- |

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |
| --- | --- |

**37. Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.
☐ Yes. Go to line 38.

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
| --- | --- |
|  | If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.
☐ Yes. Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |
| --- | --- |

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership

    ■ No

    ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here**  ....................................

| | |
|---|---|
| | **$0.00** |

| **Part 8:** | List the Totals of Each Part of this Form |
|---|---|

55. **Part 1: Total real estate, line 2**  ...................................................................................    **$468,500.00**

56. **Part 2: Total vehicles, line 5**    **$8,500.00**

57. **Part 3: Total personal and household items, line 15**    **$400.00**

58. **Part 4: Total financial assets, line 36**    **$3,000.00**

59. **Part 5: Total business-related property, line 45**    **$0.00**

60. **Part 6: Total farm- and fishing-related property, line 52**    **$0.00**

61. **Part 7: Total other property not listed, line 54**    +    **$0.00**

62. **Total personal property. Add lines 56 through 61...**    **$11,900.00**    Copy personal property total    **$11,900.00**

63. **Total of all property on Schedule A/B. Add line 55 + line 62**

| | |
|---|---|
| | **$480,400.00** |

**EXHIBIT 2**

| William Barrier Roberts | Monthly Expenses |
|---|---|
| Groceries | $700.00 |
| Utilities | $384.00 |
| Health Ins. | $153.00 |
| Fuel | $350.00 |
| Auto upkeep | $100.00 |
| Auto Ins. | $72.00 |
| Cable | $190.00 |
| Cell Phone | $72.00 |
| Clothing | $100.00 |
| Misc. Household Expenses | 300.00 |
| **Total:** | **$2,421.00** |

EXHIBIT 3

Fill in this information to identify your case:

| | | | |
|---|---|---|---|
| Debtor 1 | **William Barrier Roberts** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF ALABAMA | | |
| Case number | 18-83442-CRJ-11 | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106Sum

### Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1:    Summarize Your Assets

|  |  | Your assets<br>Value of what you own |
|---|---|---|
| 1. | **Schedule A/B: Property** (Official Form 106A/B)<br>1a. Copy line 55, Total real estate, from Schedule A/B............................................................ | $ 468,500.00 |
|  | 1b. Copy line 62, Total personal property, from Schedule A/B...................................................... | $ 11,900.00 |
|  | 1c. Copy line 63, Total of all property on Schedule A/B............................................................... | $ 480,400.00 |

### Part 2:    Summarize Your Liabilities

|  |  | Your liabilities<br>Amount you owe |
|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)<br>2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* | $ 491,000.00 |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)<br>3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*................................ | $ 19,382.48 |
|  | 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*............................ | $ 5,754,408.19 |
|  | **Your total liabilities** | $ 6,264,790.67 |

### Part 3:    Summarize Your Income and Expenses

|  |  |  |
|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I)<br>Copy your combined monthly income from line 12 of *Schedule I*.......................................................... | $ 0.00 |
| 5. | *Schedule J: Your Expenses* (Official Form 106J)<br>Copy your monthly expenses from line 22c of *Schedule J*.......................................................... | $ 9,799.00 |

### Part 4:    Answer These Questions for Administrative and Statistical Records

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ☒ Yes

7. **What kind of debt do you have?**

   ☐ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9 for statistical purposes. 28 U.S.C. § 159.

   ☒ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

EXHIBIT 3

Debtor 1 __William Barrier Roberts__   Case number *(if known)* __18-83442-CRJ-11__

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.

$ _____

9. **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | | Total claim |
|---|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ | 0.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ | 5,812.59 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ | 0.00 |
| 9d. Student loans. (Copy line 6f.) | $ | 0.00 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ | 0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ | 0.00 |
| 9g. **Total.** Add lines 9a through 9f. | $ | 5,812.59 |

Software Copyright (c) 1996-2018 Best Case, LLC - www.bestcase.com                                                                Best Case Bankruptcy