IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| ROBERTS, WILLIAM BARRIER | ) CASE NO. 18-83442-CRJ11 |
| SSN: XXX-XX-9314 | ) CHAPTER 11 |
| | ) |
| Debtor. | ) |
| | ) |

## DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 11 AS AMENDED FILED BY MELANIE MURRAY

COMES NOW William Barrier Roberts, as debtor and debtor-in-possession ("Debtor" or "Roberts"), by and through undersigned counsel, and files his objection to Proof of Claim No. 11 as amended of Melanie Murray ("Murray"), and respectfully states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for relief requested in this Objection are sections 105(a) and 502(b) of the United States Code, 11 U.S.C. § *et seq.* (the "Bankruptcy Code"), and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BACKGROUND

2. On November 16, 2018 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3. Since the Petition Date, Debtor continues to manage his affairs as Debtor-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108.

PROOF OF CLAIM NO. 11 OF MELANIE MURRAY AS AMENDED

4. On February 28, 2019, Murray filed her Proof of Claim No. 11 as amended ("POC 11"). Murray's POC 11 asserts an unsecured claim in the amount of $74,599.05. Murray alleges the basis for POC 11 is for a Default Loan for unfunded capital calls under the LLC agreement.

5. The same issue has been raised by Murray as a counterclaim [AP Doc. 39] in *William Barrier Roberts v. Melanie Hammer Murray, et al.*, Adversary Proceeding Case No. 19-80017-CRJ. A part of this objection is based upon the Debtor's Motion to Dismiss Counterclaim [AP Doc. 47] in the Adversary Proceeding.

## RELIEF REQUESTED

6. By this Objection, and for reasons stated herein, Debtor seeks the entry of an order disallowing and expunging POC 11 of Murray as amended.

## BASIS FOR RELIEF

7. Melanie Murray asserts a claim for damages against Roberts for his alleged failure to pay a portion of Capital Calls, which she in her capacity as the sole Management Committee member of Bullet & Barrel, LLC made in October 2018. Assuming *arguendo* (as to this objection only) both the appropriateness of the Capital Calls on which Murray bases such claim, and the validity of the B&B Company Agreement ("B&B Agreement"), Murray has failed to satisfy the requirements of that agreement for asserting such claim.

8. Section 2.2(c)(i) of the B&B Agreement sets out both the sole and exclusive remedy for a claim against a Member who fails to make a **capital** contribution in response to a Capital Call as follows:

> (c) <u>Failure to Contribute Capital</u>. If a Non-Contributing Unitholder fails to make an additional Capital Contribution required by <u>Section 2.2(b)</u> within the ten (10) day period set forth there (the amount of the failed contribution shall be the "Default Amount"), **the contributing Common Unitholder(s) (the "Contributing Unitholders")** shall have

any one or more of the following remedies as their **sole and exclusive remedies at law** or in equity in connection with the applicable default, **which remedies shall be elected by** the majority of the Members that are also **Contributing Unitholders** (based on Percentage Interests); provided, however, that if such Members elect the remedy set forth in Section 2.2(c)(ii), they may not elect the remedies set forth in Section 2.2(c)(i) in connection with the applicable default:

(i) to advance to the Company on behalf of, and as a loan to the Non-Contributing Unitholder, an amount equal to the Default Amount to be evidenced by a promissory note in form satisfactory to the Contributing Unitholder(s), payable on demand and bearing interest at the rate of eight percent (8.0%) per annum (each such loan, a "Default Loan"). **The Capital Account of the Non-Contributing Unitholder shall be credited with the amount of such Capital Contribution and such amount shall constitute a debt owed by the Non-Contributing Unitholder to the Contributing Unitholder(s)**. …

(B&B Agreement at 2, Section 2.2(c)(i) (emphasis added).

9. Murray contributed no capital for herself, much less for Roberts, in response to the Capital Calls she made in October, 2018: "Since completing her initial Capital Contributions in 2017, Murray has provided approximately $1.1 million in net additional funding to keep B&B afloat, **all of which B&B has booked as debt repayable to Murray**." Counterclaim at 5, ¶ 29 (emphasis added). Accordingly, Murray was not a "Contributing Unitholder" in response to either Capital Call on which she predicates her claim for an alleged Default Loan to Roberts, which is the basis of her claim in Count I of the Counterclaim. Needless to say, since Murray only loaned funds directly to B&B and so "booked as debt repayable to Murray," Roberts' Capital Account was <u>not</u> credited with a Capital Contribution for either Capital Call. Hence, the debt on which Murray asserts such claim against Roberts was and remains a debt of B&B, not Roberts.[1]

10. Count II of the Counterclaim for alleged "wrongful disassociation" by Roberts also is due to be dismissed, because it is predicated upon Roberts' filing of his petition in bankruptcy. See Counterclaim at 12, ¶¶ 65, 66. See id. at 3, ¶ 18.

---

[1] Indeed, Murray herself has defaulted on her obligation to contribute **capital**, rather than loaned funds, in response to the Capital Calls she herself made, in breach of the B&B Agreement. She has chosen instead to saddle B&B with substantial additional debt to her during her continuing gross mismanagement of B&B.

11. In doing so, Murray (both for herself and B&B) seeks to impose liability for damages on Roberts beyond "any other debt, obligation or liability of the Member to the Company or the other Members," Id. at 3, ¶ 18 quoting B&B Agreement Section 6.4(b), and ¶¶ 67 and 69. This unquestionably would constitute a diminishment and impairment of Roberts' economic interest and rights in B&B, which are assets of his bankruptcy estate.

12. In a scholarly opinion, the Bankruptcy Court in Pearce v. Woodfield, 2019 Bankr. LEXIS 1607 (Bankr. OR, May 16, 2019), held that a Debtor's economic and voting rights as an LLC member cannot be terminated or modified solely as a result of filing a bankruptcy petition because provisions of an Operating (Company) Agreement and/or the LLC statute providing for same are unenforceable in bankruptcy under Section 541(c)(1) of the Bankruptcy Code. 2019 Bankr. LEXIS 1607 *9 *10. The Court should follow such persuasive authority in dismissing Count II of the Complaint.

13. Count III of the Counterclaim for a declaratory judgment, to the limited extent that it is not otherwise so vague as to provide insufficient notice as to the matters in dispute as to which a declaration is sought, is no less viable than Counts I and II of the Counterclaim. It specifically requests a declaratory judgment with respect to only Sections 2.2(a) and 10.10(b) of the B&B Agreement, which provide respectively, as follows:

> **2.2 (a) Permitted Capital Contributions**. Unitholders may make additional capital Contributions only with the written consent or vote of the Management Committee, in which event the Company shall issue to any contributing Unitholder additional Units in an amount to be determined by the Management Committee.

> **10.10 (b) Issuance of Additional Units**. In addition to the adjustments permitted by Section 2.2(a), the Company, upon consent or vote of the Management Committee, may increase the number of Units owned by an existing Member upon such terms and conditions as may be determined appropriate by the Management Committee.

B&B Agreement, Sections 2.2(a) and 10.10(b).

14. Since Murray did not withdraw the Capital Calls she made in October 2018, but contributed no capital in response thereto, making loans to B&B instead, she is in willful breach of the B&B Agreement, even as she now seeks to use these other provisions to dilute Roberts' interest in B&B. As a consequence, the Court should dismiss this claim brought by a Member in continuing breach of her own capital obligation to B&B, as well as by B&B at her sole instance, for a declaratory judgment not only about *voluntarily* contributing additional capital pursuant to Section 2.2(a) of the B&B Agreement, but also about issuing additional membership units to herself otherwise pursuant to Section 10.10(b).

15. Debtor further denies that he has taken any action which would be wrongful or breach any duties owed to B&B or Melanie Murray relating to the any allegations asserted in POC 11 of Murray as amended.

    a. At all times, Melanie Murray was the Manager and President of Bullet and Barrell, and supervised and controlled (poorly) every aspect of construction and operation. The Debtor, while employed by Bullet and Barrell, attempted in good faith to manage operations and make appropriate purchasing and management decisions, only to be thwarted by Melanie Murray. To the contrary, Melanie Murray did and continues to grossly mismanage Bullet and Barrell. Losses have increased since the termination of the Debtor's employment.

    b. At all times during construction, a general contractor, Joe Moon Construction Services supervised and directed construction.

    c. The Debtor disputes there has been "wrongful disassociation" by him that would be enforceable under the Bankruptcy Code.

d. The Debtor asserts that other than initial capital contributions of the parties, no capital contributions have been made by either member. Capital Calls were made, but no capital was contributed by either member.

e. The Debtor disputes that any "Default Loans" have been made by Melanie Murray to the Debtor to make capital contributions.

f. The earnings stated in the Debtor's Statement of Financial Affairs was from other sources, and the Statement does not state on imply the earnings came from Bullet and Barrel.

16. Other grounds may exist to deny the Proof of Claim at issue.

WHEREFORE, premises considered, Debtor respectfully requests that this Honorable Court enter an Order disallowing Proof of Claim No. 11 of Melanie Murray as amended for the reasons stated and grant such further relief as this Court deems just and proper.

Respectfully submitted on September 20, 2019.

/s/ Stuart M. Maples
STUART M. MAPLES (ASB-1974-S69S)

MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

# CERTIFICATE OF SERVICE

I do hereby certify that on September 20, 2019, a copy of the foregoing document was served on the following by the means indicated below:

Richard Blythe
Bankruptcy Administrator
richard_blythe@alnba.uscourts.gov


Jayna P. Lamar
Stewart A. Kelly
Christian A. Pereyda
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North 2400
Regions/Harbert Plaza
Birmingham, Alabama 35203

Walter A. Dodgen
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street S.W.
Huntsville, Alabama 35801

All parties requesting notice via CM/ECF

Via U.S. Mail to all creditors on matrix

/s/ *Stuart M. Maples*
STUART M. MAPLES