IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERTS, WILLIAM BARRIER | ) | CASE NO. 18-83442-CRJ11 |
| SSN: XXX-XX-9314 | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |

### SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF WILLIAM BARRIER ROBERTS, DEBTOR AND DEBTOR-IN-POSSESSION

**October 7, 2019**

MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

Counsel for Debtor-in-Possession

1

# DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## DATED OCTOBER 7, 2019

In accordance with 11 U.S.C. § 1121, William Barrier Roberts, debtor-in-possession ("Debtor") in the above captioned Chapter 11 case files this Second Amended Plan of Reorganization dated October 7, 2019, (the "Plan"), in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division ("Bankruptcy Court" or "Court").

## I.
## DEFINITIONS

The following terms shall have the following meanings unless the context otherwise requires and, unless otherwise indicated, the singular shall include the plural. The definitions contained in §§101 and 1101 of the Bankruptcy Code shall control unless different definitions are stated herein, in which case the definitions as stated herein shall control for purposes of this Plan.

**1.01** **"Accounting Fees"** means accounting and/or administrative management fees for preparing tax returns and other financial reports.

**1.02** **"Administrative Claim"** means Claims that have been timely filed before the Administrative Claim Bar Date (except as otherwise provided by a separate order of the Bankruptcy Court, including the Sale Procedures Order), for costs and expenses of administration under §§ 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services); and (b) all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code, 28 U.S.C. §§ 1911-1930, but excluding Professional Fee Claims.

**1.03** **"Allowed"** means with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor in its schedules of liabilities as other than disputed, contingent or unliquidated, unless a Proof of Claim has been timely filed, and as to which the Debtor or other parties-in-interest have not Filed an objection by the Claims Objection Bar Date; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is Allowed: (i) in any stipulation of the amount and nature of a Claim executed prior to the Effective Date and approved by the Bankruptcy Court; or (ii) in any stipulation with the Debtor of the amount and nature of a Claim executed on or after the Effective Date; (d) a Claim that is Allowed pursuant to the terms hereof; or (e) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

**1.04** **"Allowed Claim"** means a right against the Debtor within the meaning of § 101(5) of the Bankruptcy Code in respect of which a Proof of Claim has been filed with the Bankruptcy Court within the period of limitation fixed by Bankruptcy Rule 3003 or scheduled in the list of creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection as to allowance or amount thereof has been raised within the applicable period of

2

limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court or local rule, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari is pending. Unless otherwise specified in this Plan or in a Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include (a) interest on the amount of such Allowed Claim accruing from and after the Petition Date, (b) punitive or exemplary damages, (c) any fine, penalty or forfeiture, (d) costs of repossession or dispossession or (e) post-petition attorney fees and costs unless such fees and costs have been approved and allowed by Final Order prior to the Confirmation Date.

1.05    "**Avoidance Actions**" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor, or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

1.06    "**Bankruptcy Code**" has the meaning given to such term in the preamble of this Plan.

1.07    "**Bankruptcy Court**" or "**Court**" means the United States District Court for the Northern District of Alabama, having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to Section 157 of Title 28 of the United States Code or the General Order of the District Court pursuant to Section 151 of Title 28 of the United States Code, the United States Bankruptcy Court for the Northern District of Alabama.

1.08    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Alabama, the Local Rules of Civil Practice and Procedure of the United States District Court for the Northern District of Alabama, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

1.09    "**Bar Date**" means the date established by the Court as the deadline for filing all Claims.  Bar date for governmental claim holders in a Chapter 11 case is 180 days from the date of filing.  Claims filed after the Bar Date, which are not otherwise Allowed Claims, will be disallowed and of no effect.

1.10    "**Business Day**" means any day, other than a Saturday, Sunday, "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)) or a day on which banking institutions in the State of Alabama are authorized or obligated by law, executive order or governmental decree to be closed.

1.11    "**Claim**" means a "claim" as that term is defined in § 105(5) of the Bankruptcy Code.

1.12    "**Class**" means one of the classes of allowed claims or equity interests established by the Plan.

3

**1.13** "**Confirmation Date**" means the date of the Confirmation Order is entered by the Bankruptcy Court.

**1.14** "**Confirmation Order**" means the order of the Bankruptcy Court in form and substance acceptable to the Debtor, confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

**1.15** "**Court**" means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division.

**1.16** "**Debtor**" means William Barrier Roberts.

**1.17** "**Disbursing Agent**" means William Barrier Roberts.

**1.18** "**Effective Date**" means thirty (30) days after the Confirmation Date.

**1.19** "**Estate**" means the estate of the Debtor created on the Petition Date by § 541 of the Bankruptcy Code.

**1.20** "**Executory Contract**" or "**Unexpired Lease**" means a contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment or rejection under § 365 of the Bankruptcy Code.

**1.21** "**File**" or "**Filed**" means, with respect to any pleading, entered on the docket of the Chapter 11 Case and properly served in accordance with the Bankruptcy Rules or with respect to a Claim, a Claim for which a Proof of Claim has been properly and timely filed in accordance with the deadlines established by the Bankruptcy Court for filing Proofs of Claim.

**1.22** "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for a writ of certiorari or move for reargument or rehearing has expired and no such appeal, petition, or motion has been timely Filed, or as to which any appeal, petition, or motion that has been Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed; provided, however, that the possibility that a motion under Federal Rule of Civil Procedure 60 or Federal Rule of Bankruptcy Procedure 9024 may be filed with regard to such an order or judgment shall not cause such order or judgment not to be a Final Order.

**1.23** "**General Unsecured Claims**" means Claims against the Debtor that are not Secured Claims, Administrative Claims, Priority Claims, Professional Fee Claims, Deficiency Claims or claims for rejection damages under an executory contract or unexpired lease.

**1.24** "**Impaired**" means, with respect to a Claim, or Class of Claims, "impaired" within the meaning of §§ 1123(a)(4) and 1124 of the Bankruptcy Code.

**1.25** "**IRS**" means the United States Treasury, Internal Revenue Service.

4

**1.26** **"Net Plan Profits"** means net profits determined in accordance with generally accepted accounting principles consistently applied: (a) less administrative payments which are due on or before the date on which Net Plan Profits are being calculated; (b) less any payments required by this plan, which are due on or before the date on which Net Plan Profits are being calculated, other than payments out of Net Plan Profits.

**1.27** **"Plan"** means this plan of liquidation under Chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be.

**1.28** **"Petition Date"** means November 16, 2018.

**1.29** **"Priority Claim"** means those expenses and claims which may be provided for under 11 U.S.C. Section 507 (a) (2), (3), (4), (5), (6), (7), (8) and (9) of the Code.

**1.30** **"Proponent"** means Debtor.

**1.31** **"Pro Rata"** means the ratio of the amount of an individual Claim in any particular Class of Claims to the aggregate amount of all Claims in such Class that have not yet been disallowed.

**1.32** **"Secured Claim"** means a Claim against the Debtor (a) for an extension of credit to the Debtor that is secured by a Lien on property in which the Debtor's Estate has an interest or that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the Holder of such Claim's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a) and, if applicable, § 1129(b) of the Bankruptcy Code, (b) arising under equipment financing leases, or (c) a tax claim secured by a Lien on property of the Debtor. To the extent the value of any property securing such Claim is less than the amount of such Claim, the difference between such value and such Claim is a "Deficiency Claim."

**1.33** **"Unimpaired"** means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of §§ 1123(a)(4) and 1124 of the Bankruptcy Code.

**1.34** **"Unsecured Claim"** means an unsecured claim, including a Deficiency Claim, that is not an Administrative Claim, a Claim for a Cure Amount, an Equity Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, but shall not include any Claim that is disallowed or released, whether by operation of law, Final Order, written agreement, the provisions of this Plan or otherwise.

5

**2.0    UNCLASSIFIED CLAIMS**

    **A.    Administrative Expense Claims.**  Administrative Expense Claims shall consist of all administrative expense claims of the Debtor's Chapter 11 case as allowed pursuant to § 503(b) of the code and given priority in accordance with § 507(a)(1) of the Code.  These claims are divided into the following sub-categories:

        (i)    **Maples Law Firm, P.C.**:  Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C., relating to the firm's representation of the Debtor in Bankruptcy.  These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

        (ii)    **Julie Lockwood of Van Valkenburgh & Wilkinson Properties, Inc.**:  Debtor retained Julie Lockwood as its Realtor for the efficient sale of certain real Property, pursuant the Order entered on July 9, 2019 [*See* Doc. 130].  These fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

        (iii)    **Callahan PC.**:  Debtor retained Callahan PC as special counsel to aid in representation of the Debtor in oppression litigation concerning his interest in B&B, pursuant to the Order entered on February 21, 2019 [*See* Doc. 54].  These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim in the amount of $164,074.70 which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

    **B.    Tax Claims.**

        (i)    The Allowed Tax Claim of the IRS.

        (ii)    The Allowed Tax claim of the Alabama Department of Revenue.

        (iii)    The Allowed Tax claim of any other taxing authorities.

**2.01    UNIMPAIRED CLASSES**

All classes of claims are impaired under the Plan.

**2.02    IMPAIRED CLASSES**

**Class 1 – Allowed Secured Claims.**

Class 1(a) shall consist of the Allowed Secured Claim No. 8 of GMFS, LLC c/o Specialized Loan Servicing, LLC in the amount of $305,639.65.

Class 1(b) shall consist of the Allowed Secured Claim of Smart Bank in the amount of $185,000.00.

These claims are secured by the Debtor's marital residence located at 2203 Annadale Road, Huntsville, Alabama 35801. The Debtor's interest in this property is 50%. There is a significant amount of equity in the property securing the claims of GMFS, LLC c/o Specialized Loan Servicing, LLC and Smart Bank. The property is currently listed for sale and once sold, will pay off both secured creditors and still have money left in the estate.

**Class 2 – Allowed Unsecured Claims.**

Class 2 shall consist of the Allowed Unsecured Claims of all other unsecured creditors. The Debtor has timely objected to Proof of Claims 10, 11, 12, 13 and 14, as amended, totaling $4,934,599.05. Further, the claims of First National Bank, Proof of Claims 6 and 7, in the total amount of $5,580,202.79, are being serviced by the principal borrow, Bullet & Barrel, LLC. It is anticipated by the Debtor that after the objections to claims are completed, he will pay Allowed Unsecured creditors in full

**Class 3 – Individual Equity.**

Class 3 shall consist of Individual Equity Claims of the Debtor. No payment will be made unless all Allowed Unsecured Claims are paid in full. No Individual Equity payments are expected at this time other than Debtor's monthly household expenses.

**Class 4 – Shannon League Roberts Domestic Support Obligations.**

Class 4 shall consist of the domestic support obligations to Shannon League Roberts arising from the Divorce Proceedings filed in Madison County Circuit Court Case No. DR-2018-900823; *Shannon Roberts v. William B. Roberts.* A settlement agreement, which is attached hereto as Exhibit 1, has been reached.

### III.
### IMPAIRMENT AND TREATMENT OF CLASSES UNDER THE PLAN

The Plan will be summarized by incorporation of pertinent portions. Other provisions of the Plan are extremely important, especially Article I, Definitions. The Plan should be read in full.

## 3.0    TREATMENT OF UNCLASSIFIED CLAIMS

A.    **Administrative Expense Claims:** This class shall consist of all administrative expense claims of the Debtor' Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code. This class is divided into the following sub-classes:

(i)    **Maples Law Firm, P.C.:** Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C., relating to the firm's representation of the Debtor in

Bankruptcy in the amount of $30,000.00. These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

(ii) **Julie Lockwood of Van Valkenburgh & Wilkinson Properties, Inc.**: Debtor retained Julie Lockwood as its Realtor for the efficient sale of certain real Property, pursuant the Order entered on July 9, 2019 [*See* Doc. 130]. These fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

(iii) **Callahan PC.**: Debtor retained Callahan PC as special counsel to aid in representation of the Debtor in oppression litigation concerning his interest in B&B, pursuant to the Order entered on February 21, 2019 [*See* Doc. 54]. These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim in the amount of $164,074.70 which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

**B.** **Tax Claims.**

(i) **IRS.**: The IRS asserts a Priority Claim of $13,089.88. The Allowed Priority Claim of the IRS shall be paid in the sixty (60) equal monthly installments, commencing sixty (60) days after the Effective Date of the Plan. Payment on the IRS Tax Claim shall be $241.00 per month, at 4% interest, per annum.

During the pendency of the repayment period for the pre-petition tax debt owed to the IRS, in the event the Debtors fail to remit any monthly payment on the IRS unsecured priority claim as each payment becomes due; or, timely file any and all post-petition federal income tax returns by the due date for each respective tax period including any extensions and pay the taxes due on the return; the automatic stay will be considered terminated and the IRS may proceed with its legal and/or administrative remedies to collect any and all sums due on its amended claim and any post-petition liability.

(ii) **Alabama Department of Revenue.**: The Alabama Department of Revenue asserts a Priority Claim of $5,630.62. The Allowed Priority Claim of the Alabama Department of Revenue shall be paid in the sixty (60) equal monthly installments, commencing sixty (60) days after the Effective Date of the Plan. Payment on the Alabama Department of Revenue Tax Claim shall be $104.00 per month, at 4% interest, per annum.

**3.01 TREATMENT OF IMPAIRED CLAIMS**

8

**Classified Claims.**

**Class 1 – Secured Claims.**

Class 1(a) shall consist of the Allowed Secured Claim No. 8 of GMFS, LLC c/o Specialized Loan Servicing, LLC in the amount of $305,639.65

Class 1(b) shall consist of the Allowed Secured Claim of Smart Bank in the amount of $185,000.00.

These claims are secured by the Debtor's marital residence located at 2203 Annadale Road, Huntsville, Alabama 35801. The Debtor's interest in this property is 50%. There is a significant amount of equity in the property securing the claims of GMFS, LLC c/o Specialized Loan Servicing, LLC and Smart Bank. The property is currently listed for sale and once sold, will pay off both secured creditors and still have money left in the estate.

**Class 2 – Unsecured Claims.**

Class 2 shall consist of the Allowed Unsecured Claims of all other unsecured creditors. The Allowed Unsecured Claims of the unsecured creditors will be paid from the remainder of the disposable income of the Debtor after the payment of all administrative and tax claims for sixty (60) months after the Effective Date of the Plan as well as proceeds from the *Roberts v. Murray, et al* litigation, the sale of the marital residence, and the liquidation of Roberts, LLC and other entities.

The Debtor has timely objected to Proof of Claims 10, 11, 12, 13 and 14, as amended, totaling $4,934,599.05. Further, the claims of First National Bank, Proof of Claims 6 and 7, in the total amount of $5,580,202.79, are being serviced by the principal borrow, Bullet & Barrel, LLC.

It is anticipated by the Debtor that after the objections to claims are completed, he will pay Allowed Unsecured creditors in full.

**Class 3 – Individual Equity.**

Class 3 shall consist of Individual Equity Claims of the Debtor. No payment will be made unless all Allowed Unsecured Claims are paid in full. No Individual Equity payments are expected at this time other than the Debtor's monthly household expenses.

**Class 4 – Shannon League Roberts for Domestic Support Obligations.**

Class 4 shall consist of the domestic support obligations to Shannon League Roberts arising from the Divorce Proceedings filed in Madison County Circuit Court Case No. DR-2018-900823; *Shannon Roberts v. William B. Roberts.* A settlement agreement, which is attached hereto as Exhibit 1, has been reached.

9

To the best of Debtor's knowledge, he is not a party to any executory contacts. To the extent that the Debtor is a party to such a contract, the same is hereby assumed.

**V.**
**MEANS OF EXECUTION OF THE PLAN**

**5.01    Means of Implementation of the Plan.**

(a)    Debtor shall implement the terms of the Plan by executing all documents necessary. Debtor shall also execute such additional documents as are necessary to comply with the terms of the Plan.

**5.02    Execution of All Documents.**  The Plan authorizes the Debtor to execute all documents necessary to carry out the terms of the Plan.

**5.03    Objections to Claims and Allowances.**  No payment or distribution shall be made to the holder of a claim against which an objection has been filed within thirty (30) days after the Effective Date until any such objection to a claim has been determined by Final Order of the Court. Disputed and unliquidated claims shall be estimated for purposes of voting and unless the Court orders otherwise, payments to holders of contested claims that are subsequently allowed shall be made in accordance with the terms of the Plan.  Contest of claims shall be filed with the Court no later than sixty (60) days after the Effective Date.

**5.04    Retention of Assets.**  Except as provided for in the Plan or in the order confirming the Plan, on the Confirmation Date the Debtor shall be vested with all of the property of the estate and shall retain all property rights free and clear of all liens, charges, and other interests of the creditors.

**VI.**
**MODIFICATION AND CONFIRMATION OF THE PLAN**

**6.01    Pre-Confirmation Modifications.**  Debtor may propose modifications hereof at any time prior to Confirmation without leave of this Court, upon such notice as may be required by this Court.  If such modification is made after acceptance hereof, this Plan as so modified shall be deemed accepted by all holders of claims and equity interests that have previously accepted this plan, provided that this Court finds that such modification would not materially and adversely change the treatment of the holders of claims or equity interests that have not accepted such modification in writing.

**6.02   Post-Confirmation Modifications.**

(a) Except as provided in Subsection (b) of this section, Debtor may modify this Plan after Confirmation only if this Court determines that this Plan as so modified meets all of the requirements for confirmation.

(b)     Notwithstanding Subsection (a) of this section, the Debtor may modify this Plan during the period between the Confirmation Date and the "substantial consummation," provided that this Court determines only that such modification does not materially and adversely change the treatment of claims or equity interests but merely remedies a defect or omission or reconciles an inconsistency in or between this Plan and/or the Confirmation Order in such manner as may be necessary to carry out the purposes and effect hereof.

**6.03   Effect of Confirmation.**

(a) Upon Confirmation, the provisions hereof shall bind the Debtor and each holder of a Claim whether or not (1) the Claim of such holder is impaired hereunder, or (2) such holder has accepted this plan.

(b)     Except as otherwise provided herein or in the Confirmation Order, Confirmation vests all of the property of the estate in Debtor, free and clear of all claims.

(c)     Except as provided for in § 1141(d)(5), Confirmation discharges the Debtor from any debt that arose before the Confirmation Date and any claim of a kind specified in Section(s) 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (1) a proof of claim is filed with respect thereto, (2) the debt appears in the schedules of liabilities filed by the Debtor, (3) the debt is allowed, or (4) the holder of such debt has accepted this Plan.

(d)     Confirmation shall constitute approval or ratification by this Court of the assumption or rejection of the Debtor' executory contracts and unexpired leases pursuant to Section IV hereof.

(e)     Confirmation shall constitute approval by this Court of all financing arrangements, leases, contracts, and other actions that the Debtor propose in the Disclosure Statement or herein, to enter into, make, or take in connection with implementation hereof, including the execution of any documents as of the Effective Date.

## VII.
## RETENTION, ENFORCEMENT AND WAIVER OF CLAIMS

**7.01**   Pursuant to § 1123 (b) (3) of the Code, the Debtor shall retain and may enforce any and all claims of the Debtor except claims waived, relinquished, or released in accordance with the Plan.

**7.02**   No party in interest except the Debtor shall maintain or commence an action to recover a preference as defined in § 547 (b) of the Code after the Confirmation Order is entered.

11

**7.03**   Contests of Claims shall be filed with the Court not later than thirty (30) days after the Effective Date.

**VIII.**

**<u>JURISDICTION OF THE COURT</u>**

**8.01**   **<u>Continuing Jurisdiction.</u>**  The Court shall retain and have exclusive jurisdiction over the Reorganization Case for the following purposes:

(a)    To determine any and all objections to the allowance of claims or interests;

(b)    To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(c)    To determine any applications or motions pending on the Effective Date for the rejection, assumption, or assumption and assignment of any executory contract and to hear and determine, and if need be, to liquidate any and all claims arising therefrom;

(d)    To determine any and all applications, adversary proceedings, and contested matters that may be pending on the Effective Date;

(e)    To consider any modification of this Plan, remedy any defect or omission or reconcile any inconsistency in any Order of the Court, to the extent authorized by the Court;

(f)    To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or that may involve or affect the value of assets of the Company administered by the Plan;

(g)    To consider and act on the compromise and settlement of any claim against or cause of action by or against the Debtor arising under or in connection with the Plan;

(h)    To issue such orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(i)    To determine such other matters as may be set forth in any order or orders confirming the Plan or which may arise in connection with the Plan or any other Order or Orders confirming the Plan.

**IX.**
**<u>MISCELLANEOUS PROVISIONS</u>**

**9.01**   **<u>Prior Court Orders.</u>**  All prior orders entered by the United States Bankruptcy Court for the Northern District of Alabama are hereby incorporated by reference, including their terms, conditions, benefits, requirements and obligations.

12

**9.02**   **Cramdown.**   With respect to any class not accepting the Plan, the Proponent does hereby request confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code on the grounds that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims that are impaired.

**9.03**   **Quarterly Fees.**   The Debtor will make their quarterly fees to the Bankruptcy Administrator pursuant to 28 U.S.C. § 1930. Debtor will continue to make these payments as required post-petition.

**9.04**   **Compliance with Tax Requirements.**   In connection with the Plan, the Debtor will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

**9.05**   **Retention of Liens.**   Each creditor whose claim is secured by a lien or mortgage on property of the Debtor shall retain such lien or mortgage until such creditor's claim is paid in full according to the treatment proposed under the Plan at which time the lien shall be released.

**9.06**   **Employment and Payment of Professionals.**

(a)      During the period between the Confirmation Date and the Effective Date, Debtor may (1) continue to avail itself of the services of professional persons whose employment was approved at or prior to Confirmation in completing the administration of this case and in the consummation and performance hereof, and (2) if necessary and with the approval of this Court, employ additional professional persons to render such services.

(b)      With respect to services rendered and expenses incurred in or in connection with this case during such period by any such professional person, the professional person may render periodic billings therefore to the Debtor and the Debtor shall promptly pay the same, but each such payment shall be subject to review and approval by this Court as to the reasonableness thereof.

**9.07**   **Notice of Hearing and Motions Post Confirmation.**   Upon confirmation of the Plan, all of the motions, and applications for compensation to professionals, and notices of such hearings shall be limited to the Debtor, Bankruptcy Administrator and any party of interest directly affected by such motion or application.

**9.08**   **Satisfaction of Claims.**   The rights afforded in this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Allowed Claims, liens and encumbrances of any nature whatsoever, including any interest accrued thereon from and after the Filing Date, against the Debtor or any of their assets; and, except as otherwise provided herein, on Confirmation, all such Allowed Claims against the Debtor or their assets, any other or further Allowed Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to Confirmation are satisfied, discharged and released.

13

# X.
## CLOSING OF CASE

**10.1  Procedure for Closing Case**.  If the Court concludes that a hearing on such motion would be appropriate, such hearing shall be conducted upon notice only to the Debtor, the Bankruptcy Estate Administrator, and persons specially requesting notices at the hearing on confirmation.

Respectfully submitted this 7th day of October, 2019.

Debtor and Debtor-in-Possession

*/s/ William Barrier Roberts*
WILLIAM BARRIER ROBERTS

*/s/ Stuart M. Maples*
STUART M. MAPLES
(ASB-1974-S69S)

MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing document was served on the following by the method listed below on October 7, 2019.

Richard Blythe
Bankruptcy Administrator
P.O. Box 3045
Decatur, AL   35602
Via email:  richard_blythe@alnba.uscourts.gov

All parties requesting notice via ECF

Via U.S. Mail to all creditors on matrix

*/s/ Stuart M. Maples*
OF COUNSEL

14

EXHIBIT 1

**IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA**

| | | |
|---|---|---|
| **SHANNAN ROBERTS,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| *vs.* | * | Case Number: **DR – 2018 – 900823** |
| | * | |
| | * | |
| **WILLIAM ROBERTS,** | * | |
| | * | |
| Defendant. | * | |

# AGREEMENT

This **AGREEMENT ("AGREEMENT")** is made and entered into on this the 20th day of August, 2019, by and between **SHANNON ROBERTS** (*"Wife"*) and **WILLIAM B. ROBERTS** (*"Husband"*) (collectively **"the parties"**).

### WITNESSETH:

**WHEREAS,** the parties hereto are Husband and Wife, having been married to each other on January 4th, 2010, in Madison County, Alabama, and lived together as Husband and Wife until on or about August 31, 2018, when they separated and have since been living separate and apart; and

**WHEREAS,** the parties have not had any children and the Wife is not now pregnant; and

**WHEREAS,** there have developed between the parties marital difficulties which have resulted in their separation, and the parties hereto desire to establish a mutually agreeable basis upon which to settle all marital matters, including but not limited to matters involving their likes and dislikes as well as their property rights, obligations and responsibilities, one toward the other, in the event the Court grants a divorce at a subsequent time; and

**WHEREAS,** a portion of this Agreement deals with the division of proceeds received from the sale and division of various properties and business interest; and

EXHIBIT 1

**WHEREAS**, the Husband has filed for bankruptcy, which is currently pending.

**NOW, THEREFORE**, for and in consideration of a valuable consideration paid by each party to the other, the foregoing recitals, and the mutual covenants and agreements of the parties as hereinafter set out, the receipt and adequacy of which is hereby acknowledged, and for the purpose of settling all claims or rights between Husband and Wife, the parties agree as follows:

## GENERAL CONSIDERATIONS

(i)  The parties are executing this agreement of his or her own free will and volition in an attempt to compromise the disputed issues between them, and further acknowledge that no coercion or undue influence has been used against either party in the making of this Agreement.  Each has had independent advice of counsel of his or her own selection.

(ii)  Any modification or a waiver of any of the provisions of this agreement shall be effective only if made in writing, executed with the same formality, and approved by a court of proper jurisdiction, including the bankruptcy court.  Failure of either party to insist upon strict performance of any of the provisions hereof shall not be construed as a waiver of any other provisions.

(iii)  Husband and Wife generally, fully and completely release each other and his/her agents, attorneys, trustees, fiduciaries, representatives, predecessors, successors, heirs and assigns, and any and all persons acting through, for or in concert with either of them, from any and all claims, causes of action or actions that either party now has or may have in the future against the other arising out of, relating to, or resulting from any act, event or thing occurring or failing to occur at any time in the past, including and up to the date of this Agreement, except as to obligations owed under this Agreement.  The claims released include, but are not limited to, any and all known or unknown actions, causes of action, grievances, suits, charges, or complaints before any governmental entities or any and all private or nongovernmental entities, whether for compensatory damages, punitive damages, liquidated damages, prejudgment interest, attorney's fees, costs, expenses, or any other relief, remedy, or damages, and specifically include any claims by either party against the other arising out of or resulting from their prior dealings and also including any representations and obligations arising out of their prior dealings, as well as those claims presented in this action.

(iv)  This agreement settles all issues between Husband and Wife in conjunction with the Divorce filed in the Circuit Court of Madison County.  It further resolves any issues which could have been raised between the parties.  This agreement shall be submitted to the Circuit Court and the Bankruptcy Court for approval, and if so approved shall be incorporated into a final Divorce Judgment.  Should the Court fail or refuse to confirm this agreement in whole or in part, the same shall be wholly void and have no further force and effect.



EXHIBIT 1

(vi) The Husband acknowledges that he has made a full and complete disclosure of all assets and liabilities owned and/or owed by him, which were acquired or incurred during the parties' marriage or during the pendency of this matter. In the event that the Husband has failed to disclose any martial or business debt, not named herein, to the Wife, the parties agree that said debt will be the sole responsibility of the Husband and he covenants and agrees to pay and be responsible for this debt; and further, if legal action is brought against the Wife to recover any debt thereon, the Husband agrees to indemnify or hold the Wife harmless, and in addition, to pay any attorney's fee and costs of collection which she may incur as a result of his failure to pay said indebtedness. The parties will sign any and all documents necessary to effectuate the terms of this provision.

## SETTLEMENT DETAILS

1. **PERSONAL PROPERTY.**

    (a)     Husband shall be awarded the following personal property:

    (1)     His clothing and personal effects;

    (2)     All bank accounts in his name;

    (3)     All investment accounts in his name;

    (4)     GMC Truck;

    (5)     Any tools or equipment owned by him;

    (6)     Bankston Motorhome;

    (7)     Leather Couch in Den;

    (8)     King size bed in master bedroom;

    (9)     Dresser and side table;

    (10)    Tennessee Valley Fence;

    (11)    Madison Beverages;

    (12)    Chairs in the Den;

EXHIBIT 1

(b)        Wife shall be awarded the following personal property:

    (1)    All of her clothing and personal effects;

    (2)    All of her personal property received by gift or inheritance;

    (3)    The furniture and all other furnishings situated in the marital residence as of the date of the execution of this document not awarded to the Husband;

    (4)    GMC Yukon;

    (5)    All bank accounts in her name;

    (6)    All investment accounts in her name;

    (7)    Whitesburg Partners;

    (8)    Huntsville Mobile Home Estates;

Each party shall execute such documents as might be necessary to effectuate a proper transfer of title to the above enumerated personal property.

## 2. JOINTLY OWNED REAL PROPERTY.

(a)        Husband and Wife own jointly the following real estate/ business (designated by location);

    (1)    2115 Big Cove Rd Huntsville AL 35801;

    (2)    Valley Equipment Rental, and RBO LLC lot on Memorial Pkwy; and

    (3)    Roberts, LLC, lots on Leeman Ferry;

    (4)    Bullet & Barrel, LLC, Leeman Ferry.

## 3. 2115 BIG COVE RD, HUNTSVILLE AL 35801.

(a) Upon the execution of this Agreement, the parties will list 2115 Big Cove Rd real estate for sale with a Katherine Samples, unless the Bankruptcy Court orders otherwise. In the event the parties cannot agree upon the listing price, the parties agree that they will follow the recommendation of the realtor. Both parties shall cooperate with the relator and agree to accept any reasonable offer. Upon



EXHIBIT 1

its sale, the Husband and Wife will each receive fifty (50%) percent of the net proceeds of the sale after the debt is paid, realtor fees, and closing cost. Until such time as the Big Cove real estate sells, Husband will pay the monthly mortgage payments, utilities, insurance and taxes thereon and will maintain the house in showing condition. Both parties agree to not intentionally hold up the sale of the property and will sign any documents needed to effectuate this provision.

### 4. VALLEY EQUIPMENT RENTAL, AND RBO, LLC

(a) The Husband is awarded 100% of Valley Equipment Rental and RBO, LLC. In consideration of the Wife waiving her marital interest, the Husband does agree and covenant to pay and be responsible for any debt, for any capital gains tax, Income Tax, or any other liability which may arise as a result of said ownership; and further, if legal action is brought against the Wife to recover any debt thereon, the Husband agrees to indemnify or hold the Wife harmless, and in addition, to pay any attorney's fee and costs of collection which she may incur as a result of his failure to pay said indebtedness.

### 5. BULLET & BARREL AND ROBERTS LLC.

Husband owns a forty-nine (49%) percent membership interest in Bullet & Barrel, LLC and a fifty percent (50%) membership interest in Roberts LLC. The Parties agree that the Wife be awarded half (50%) of the net proceeds from the authorized disposition of the Husband's interest in Bullet and Barrel or distribution from Bullet and Barrel and/or distributions from the net proceeds of sale of any of the Lots currently owned by Roberts LLC, after payment of those amounts to persons named hereinbelow and any other amounts payable to others as required by the Bankruptcy Court.

Upon the sale of Husband's membership interest in Bullet and Barrel, the sale of Bullet and Barrel, and/or conclusion of the aforementioned adversary proceeding in Bankruptcy Court, whether by settlement or judgment, and the sale of lots owned by Roberts LLC and the Wife shall be due fifty percent (50%) of the net proceeds after the payment of first, $150,000.00 to Charlotte Schlittler, second, $450,000.00 to Roscoe Roberts, and third, reasonable attorneys' fees to Husband's attorneys in both the bankruptcy case-in-chief and the adversary proceeding therein against the majority member of Bullet and Barrel, as determined by the Bankruptcy Court, and forth, any other amounts payable to others as required by the Bankruptcy Court. The Wife shall have no right of control, direction or consultation with respect to either the adversary proceeding litigation, including without limitation any settlement thereof, or any other disposition of Husband's membership interests in Bullet and Barrel and Roberts LLC. The Husband shall provide the Wife the terms of the disbursement of the proceeds of the aforesaid disposition of the Husband's interests as required by the Bankruptcy Court, and/or any settlement statement reflecting the proceeds of the aforesaid disposition of the Husband's interest. The Husband shall then pay the Wife her 50% of the net



EXHIBIT 1

proceeds within 10 days of receipt, or such other time as directed by the Bankruptcy Court. Upon Wife's receipt of her share of such net proceeds, or in the event there are no net proceeds payable from the aforesaid disposition of the Husband's interests, Wife shall have no further right, title or interest in and to Husband's interests in Bullet and Barrel and Roberts LLC.

Subject to the Bankruptcy Court's approval, the Husband does agree and covenant to pay and be responsible for any deficits, money owed, debts, Income Tax, or any other liability which may arise as a result of the Husband's ownership of membership interests in Bullet and Barrel and Roberts, LLC; and further, if legal action is brought against the Wife to recover any debt thereon, the Husband agrees to indemnify or hold the Wife harmless, and in addition, to pay any attorney's fee and costs of collection which she may incur as a result of his failure to pay said indebtedness.

## 6. RETIREMENT/INVESTMENT FUNDS.

Husband and Wife shall be entitled to keep any and all retirement and/or investment funds in his and her name.

## 7. DEBTS.

Except as otherwise provided in this agreement, any debt incurred by Husband or Wife after August 31, 2018, shall be the debt of such person. Husband agrees and covenants to pay any debts incurred in his individual name, and hold Wife harmless and indemnify her for such debt and in addition, to pay any attorney's fee and costs of collection which she may incur as a result of his failure to pay said indebtedness. Likewise, the Wife agrees and covenants to pay any debts incurred in her individual name, and hold Husband harmless and indemnify him for such debt. Husband further agrees to be responsible for any debts listed in his bankruptcy.

## 8. ALIMONY.

Both parties waive any claim to seek alimony of any kind or nature from the other.

## 9. TAXES.

Husband shall be responsible for and pay his state and federal income taxes owed for the calendar year ending 2016 including the taxes owed for 1012 Big Cove Road. The Husband shall immediately begin making the payments to the IRS in the minimum amount if $332.00 a month commencing June 1, 2019 and continued thereafter until paid in full. Husband agrees and covenants to pay this tax debt, and hold Wife harmless and indemnify her for such debt and in addition, to pay any attorney's fee and costs of collection which she may incur as a result of his failure to pay said indebtedness

EXHIBIT 1

**10. LIFE INSURANCE.**

Husband has an existing life insurance policy on his life. The Husband agrees to maintain and pay for said life insurance policy. Within ten (10) days from the execution of this Agreement, Husband will name Shannon Roberts as irrevocable beneficiary in the amount of **TWO HUNDRED AND FIFTY THOUSAND ($250,000.00).** Within ten (10) days from the execution of this Agreement, Husband will name Charlotte Schlittler as irrevocable beneficiary in the amount of **ONE HUNDRED AND FIFTY THOUSAND ($150,000.00).** Upon the satisfaction of all of the above referenced terms and agreements, the Husband can change his beneficiary.

**11. REAFFIRMATION**

The Husband agrees to immediately reaffirm his debt of $150,000.00 owed to the Wife's Mother, Charlotte Schlittler.

**12. CONDITION PRECEDENT**

This Agreement is subject to and conditioned upon the acceptance of the Bankruptcy Court.

**13. ATTORNEY FEES**

The Husband agrees to pay half of the Wife's attorney fees incurred in this matter within thirty (30) days from the signing of this agreement.

**IN WITNESS WHEREOF,** Husband and Wife have hereunto set their hands and seals on duplicate originals on this the 20th day of August, 2019.

_____
**SHANNAN ROBERTS, WIFE**

_____
**WILLIAM ROBERTS, HUSBAND**

**STATE OF ALABAMA,**

**MADISON COUNTY.**



EXHIBIT 1

I, the undersigned, a Notary Public in and for said County and State, hereby certify that William Roberts, whose name is signed to the foregoing agreement, and who is known to me, acknowledged before me on this day that, being informed of the contents of this agreement, he executed the same voluntarily on the day the same bears date.

GIVEN UNDER MY HAND AND OFFICIAL SEAL on this 20ᵗʰ day of August, 2019.

NOTARY PUBLIC

Affix Notary Seal Here.

My Commission Expires: _HANNAH J. COULTER_
My Commission Expires
February 28, 2021

STATE OF ALABAMA,

MADISON COUNTY.

I, the undersigned, a Notary Public in and for said County and State, hereby certify that Shannan Roberts, whose name is signed to the foregoing agreement, and who is known to me, acknowledged before me on this day that, being informed of the contents of this agreement, she executed the same voluntarily on the day the same bears date.

GIVEN UNDER MY HAND AND OFFICIAL SEAL on this 20ᵗʰ day of August, 2019.

NOTARY PUBLIC

Affix Notary Seal Here.
HANNAH J. COULTER
My Commission Expires
My Commission Expires February 28, 2021