# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

In the Matter of:

WILLIAM BARRIER ROBERTS,

                  Debtor(s).

Case No. 18-83442-CRJ-7

CHAPTER 7

## MEMORANDUM OPINION DETERMINING THE VALIDITY AND AMOUNT OF SUPPLEMENTAL CLAIM FILED BY SHANNAN LEAGUE ROBERTS

On July 26, 2022, the Court held an evidentiary hearing on the Motion (I) to Alter or Amend Order Disallowing Claim, or, in the Alternative, (II) For Reconsideration of Order Disallowing Claim, ECF No. 511, (hereinafter the "Motion to Alter or Amend") filed by Shannan League Roberts (hereinafter "Ms. Roberts"); Proof of Claim No. 17 and Supplement to Proof of Claim No. 17-1, ECF No. 528, (collectively the "Supplemental Claim"); Response in Opposition to Motion to Alter or Amend Order Disallowing Claim and Supplemental Filing filed by Patricia Roberts and Lee Ann Roberts, ECF No. 529; and Objection to Supplemental Claim 17 and 17-1 filed by Owen Roberts, ECF No. 530, (hereinafter collectively the "Objections to Supplemental Claim"). At the conclusion of the hearing, the Court entered an Order directing the parties to file briefs explaining how the evidence and testimony presented during the hearing were relevant for purposes of determining the validity and the amount of Ms. Roberts' Supplemental Claim, ECF No. 575.

On September 26, 2022, the parties filed their respective Post-Trial Briefs.[1] Because a Chapter 7 Trustee cannot advocate for individual parties-in-interest in disputed factual matters

---

[1] Trustee's Post-Trial Brief, ECF No. 590; Post Trial Brief of Lee Ann and Patricia Roberts, ECF No. 591; and Post-Trial Brief filed by Ms. Roberts, ECF No. 592.

affecting distributions between parties, the Chapter 7 Trustee stated in his Post-Trial Brief that he will abstain from taking any further position regarding the relevance and validity of the evidence presented. Accordingly, this matter is now before the Court primarily regarding the Objection to Supplemental Claim filed by Owen Roberts, in his capacity as the personal representative of the estate of William Barrier Roberts, deceased, and regarding the Objections by the Debtor's daughters, Patricia Roberts and Lee Ann Roberts (hereinafter collectively the "Interested Parties").

The Court has carefully considered the testimony presented at the evidentiary hearing and all of the evidence offered during the hearing, the arguments of counsel and Post-Trial Briefs, and for the reasons set forth in this Memorandum Opinion finds that the Supplemental Claim filed by Ms. Roberts will be allowed in the amount of $33,272.00 as a general unsecured claim.

**FINDINGS OF FACT[2]**

1. On November 16, 2018, William Barrier Roberts (hereinafter the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor and Ms. Roberts are hereinafter collectively referred to as the "Roberts". The Debtor's wife, Ms. Roberts, asserts that she loaned the Debtor money throughout their marriage from her separate premarital assets, to fund the Debtor's ownership interest in various businesses, including his interest in Bullet & Barrel, LLC (hereinafter "Bullet & Barrel"), an entity which operates an indoor shooting range located in Huntsville, Alabama. The Debtor owned a 49% interest in Bullet & Barrel, and Melanie Murray (hereinafter "Murray") allegedly owned the remaining 51%. The Debtor sought bankruptcy relief after Murray terminated his employment at the shooting range.

---

[2] To the extent any of the Court's findings of fact constitute conclusions of law, they are adopted as such. Conversely, to the extent any of the Court's conclusions of law constitute findings of fact they are so adopted.

2. Ms. Roberts testified that she supported the Debtor's dream of opening the shooting range which he actively pursued for many years prior to filing bankruptcy. During the evidentiary hearing, the testimony revealed that the Debtor sought financing from most of his relatives, including his father, brother, and mother-in-law, as he endeavored to obtain financing to open the shooting range. According to Ms. Roberts, their marriage ended when she refused to sell their home and use the full amount of the proceeds to continue funding Bullet & Barrel.

3. On the bankruptcy petition date, the Roberts were engaged in a contested divorce action filed by Ms. Roberts in the Circuit Court of Madison County, Alabama (hereinafter the "Circuit Court") styled *Shannan Roberts v. William B. Roberts*, DR2018-900823. After the Debtor sought bankruptcy relief, Ms. Roberts filed a Consent Motion for Relief from Stay, ECF No. 34, pursuant to which the Debtor agreed to terminate the automatic stay to allow the Circuit Court to proceed with the divorce action. Based on the agreement of the parties, this Court entered an order lifting the stay to allow the Circuit Court to determine the division of the Roberts' marital assets, subject to the Court's reservation of jurisdiction over the disposition of property of the bankruptcy estate, ECF No. 55.

4. Several months later, the Roberts executed an amended agreement dated August 20, 2019 (hereinafter the "Settlement Agreement") pursuant to which they tentatively resolved the division of their marital assets and liabilities, subject to further approval by this Court and by the Circuit Court.[3] The Settlement Agreement provided, in part, for the division of proceeds, if any, from the sale and division of the Debtor's business interests and properties during the bankruptcy case. The Debtor further agreed therein to maintain life insurance in the amount

---

[3] Roberts' Ex. 2, Settlement Agreement.

3

Case 18-83442-CRJ7    Doc 600    Filed 11/18/22    Entered 11/18/22 11:14:47    Desc Main
Document    Page 3 of 20

of $250,000, designating Ms. Roberts as beneficiary until the terms of the agreement were satisfied.

5. After the parties executed the Settlement Agreement, the Debtor filed a Second Amended Chapter 11 Plan (hereinafter the "Chapter 11 Plan"), ECF No. 203, to which a copy of the Settlement Agreement was attached. Class 4 of the Chapter 11 Plan consisted of the domestic support obligations to Ms. Roberts arising from the divorce proceedings filed in the Circuit Court.

6. On June 6, 2020, the Debtor passed away before his Chapter 11 Plan was confirmed and before the Settlement Agreement was approved by either Court.

7. On June 22, 2020, the Court entered an Order approving the conversion of the Debtor's case from Chapter 11 to Chapter 7, ECF No. 375. Thereafter, on August 27, 2020, Ms. Roberts filed Proof of Claim No. 17, asserting an unsecured claim for $250,000 and listing the Settlement Agreement as the sole basis of her Claim. Paragraph (iv) of the Settlement Agreement states as follows: "Should the Court fail or refuse to confirm this agreement in whole or in part, the same shall be wholly void and have no further force and effect."[4]

8. On September 10, 2021, the Trustee filed an Objection to Proof of Claim of Shannan League Roberts [Claims Doc. 17-1] (the "Objection to Claim"), ECF No. 499, arguing that the Settlement Agreement was void because it was never approved. The Trustee further argued that the proposed terms of the agreement contained numerous property transfers between the parties in violation of the distribution priorities established under the Bankruptcy Code pursuant to 11 U.S.C. § 507. On October 26, 2021, the Court entered an Order On Trustee's

---

[4] *Id.*

4

Objection to Proof of Claim 17-1, ECF No. 509, sustaining the Trustee's Objection to Claim and disallowing the claim in its entirety.

9. On November 9, 2021, Ms. Roberts filed the Motion to Alter or Amend in which she admitted that the Settlement Agreement was unenforceable, but she argued nevertheless that she has a claim against the bankruptcy estate for funds loaned to the Debtor from her premarital estate, as well as her right to a division of marital property under Alabama law. Specifically, Ms. Roberts asserts that she loaned the Debtor money from her premarital assets to fund his interest in Bullet & Barrel, to pay debts related to the Debtor's premarital home, and to fund his interest in other businesses owned with or by his brothers, the nonpayment of which is the basis of her claim in this case.

10. Following the hearing on the Motion to Alter or Amend, the Court entered an Order allowing Ms. Roberts additional time to supplement her claim. Thereafter, Ms. Roberts filed her Supplemental Claim pursuant to which she asserted that as of the petition date she was owed the reduced amount of $242,435.00 for funds loaned to the Debtor and expenses that she paid on behalf of the Debtor. In her Post-Trial Brief, Ms. Roberts admits that the amount of her asserted claim should be further reduced to $232,435 due to a duplicate entry for the payment of taxes owed on property sold which she inadvertently included in her original calculation.

11. By agreement of the parties, the Court referred the Supplemental Claim and the objections filed by the Interested Parties to mediation which unfortunately did not result in settlement. The Court then scheduled an evidentiary hearing to determine the validity and amount of the Supplemental Claim. Prior to the hearing, the parties submitted a Proposed Pretrial Order, which included the following stipulations:

5

- The Roberts were married on January 4, 2010, in Huntsville, Alabama. Prior to the marriage, the Debtor owned a home located at 1012 Big Cove Rd., Huntsville, AL (hereinafter the "Debtor's premarital home" or "Lower Big Cove Road").

- Prior to the marriage Ms. Roberts owned a home located at 4004 Toney Ct., Huntsville, AL (hereinafter "Ms. Roberts' premarital home" or "4004 Toney Ct."). During the marriage, Ms. Roberts' premarital home was refinanced twice.

- During the marriage, the Roberts purchased a home located at 2115 Big Cove Rd., Huntsville, AL (hereinafter the "marital home" or "Upper Big Cove Road").

- The Roberts formed SLR, LLC and transferred both of their premarital homes into the LLC for rental properties.

- On October 5, 2018, Ms. Roberts filed a contested divorce action in Madison County, Alabama approximately one month before the Debtor filed his Chapter 11 petition.

- On August 20, 2019, the parties executed an amended settlement agreement tentatively resolving their divorce.

- The parties did not finalize their divorce before the Debtor passed away.

- Ms. Roberts filed a proof of claim [Claim Doc. 17] on August 27, 2020, for $250,000. She contends that loans were made by her to the Debtor which were to be paid back and that the Debtor agreed to maintain life insurance policies to cover these obligations.

12. During the evidentiary hearing, Ms. Roberts testified that she made the following loans to the Debtor which constitute the basis of her claim that the Debtor allegedly assured her would be "taken care of":

| | |
|---|---|
| Refinancing of 4004 Toney Ct. | $35,000.00 |
| Sale of 4004 Toney Ct. | $49,163.00 |
| Tax debt in Ms. Roberts' name from the sale of the Debtor's premarital home | $23,937.00 |
| Tax debt for the sale of Ms. Roberts' premarital home | $10,000.00 |

6

Case 18-83442-CRJ7    Doc 600    Filed 11/18/22    Entered 11/18/22 11:14:47    Desc Main
Document    Page 6 of 20

| | |
|---|---|
| Annuity owned by Ms. Roberts and invested in Debtor's various businesses | $80,000.00 |
| Payment to North Alabama Bank on account of Debtor's loan | $ 9,335.00 |
| Funds invested in stain removal business owned by the Debtor's brother | $15,000.00 |
| Funds put into an investment account | <u>$10,000.00</u> |
| Total | $232,435.00 |

13. When the Debtor and Ms. Roberts were married in 2010, they each owned their respective premarital homes. Ms. Roberts also owned an annuity with a balance of approximately $100,000, and the Debtor owned an interest in Tennessee Valley Fence where he worked. Ms. Roberts is a professional counselor with a Master's Degree in Counseling. During their marriage, Ms. Roberts earned between $35,000 and $50,000 per year while the Debtor earned approximately $150,000 annually. The Roberts shared living expenses, with each paying expenses of the other at times.

14. After they married, the Roberts lived in Ms. Roberts' premarital home until May of 2012 when they together purchased their martial home together at Upper Big Cove Road. The Roberts borrowed $36,293 from Ms. Roberts' mother, Charlotte Schlittler (hereinafter "Schlittler") to make the down payment on the property.[5] Ms. Roberts testified that they had to include her assets to obtain financing for the purchase because the Debtor alone did not qualify for financing.[6] After they purchased Upper Big Cove Road, the Roberts made extensive

---

[5] Roberts' Exhibit 18, Settlement Statement; Ms. Roberts' Exhibit 27, Settlement Statement.
[6] Roberts' Exhibit 26, Email from Southern Community Bank.

7

renovations to the interior of the home and landscaping, with both the Debtor and Ms. Roberts investing a portion of their own premarital funds in the home.

15. Throughout their marriage, Ms. Roberts testified that the Debtor was constantly scrambling to obtain funds to invest in various businesses. Soon after the Debtor learned that Ms. Roberts' credit score was better than his, Ms. Roberts stated that the Debtor engaged in a deliberate investment strategy, accruing debt in her name to place himself in a better borrowing position. She further testified that the Debtor repeatedly assured her that "everything would be taken care of" and that she would be "paid back" for everything that she loaned the Debtor. Ms. Roberts explained that she agreed to loan the Debtor funds from her premarital assets throughout their marriage because she supported her husband and his various business pursuits.

16. As part of the Debtor's investment strategy to transfer debt into Ms. Roberts' name to increase his own borrowing power, the Debtor eventually gave up his ownership interest in SLR, LLC, leaving Ms. Roberts as the sole member of the LLC liable for the mortgages secured by both of their premarital homes. According to Ms. Roberts, the Debtor allegedly assured her that having the LLC in her name alone would not affect her personally, despite leaving her solely liable for the debt related to his premarital home. Ms. Roberts explained that she willingly did everything she could to assist her husband financially in his business pursuits. Ms. Roberts admitted during her testimony that the loans which she asserts that she made to her husband were completely undocumented, that the alleged loans did not include any specific repayment terms, and that the alleged loans were not included in their tax returns. Nevertheless, Ms. Roberts repeatedly testified that the Debtor consistently reassured her that the following amounts would somehow be paid back and that everything would come back to her:

- ***Refinancing of 4004 Toney Ct. - $35,000[7]***

On July 20, 2016, SLR, LLC obtained a loan in the amount of $271,144 which was secured by 4004 Toney Ct., pursuant to which the original loan secured by Ms. Roberts' premarital home was increased by $35,000.00.[8] When SLR, LLC obtained the loan, Ms. Roberts was the only member of the LLC. Ms. Roberts asserts that she loaned all of the proceeds from refinancing her premarital home to the Debtor to pay for various business expenses.

It is undisputed, however, that $10,000 of the proceeds were actually used by the Roberts to partially repay Ms. Roberts' mother for the down payment on their home. When the Roberts' marital home was sold during the Debtor's bankruptcy proceeding, the bankruptcy estate and Ms. Roberts shared equally in the proceeds from the sale of the home without objection.

Ms. Roberts testified that she does not know how the balance of the funds, $25,000, were used but stated that she was under the impression that the Debtor used a portion of the proceeds to invest in various businesses, including Madison Beverage, Tennessee Valley Equipment, and DuraGate. Despite Ms. Roberts' testimony about her understanding, Terri Nicholson ("Nicholson"), a bank officer who financed several businesses for the Debtor and his older brother, Owen Roberts, testified that the Debtor did not invest any capital in these businesses, so the record established at the hearing is unclear how the balance of the proceeds were used. Ms. Roberts did not offer any documentation into evidence in support of her allegation how the Debtor used the balance of the proceeds. It is undisputed that Ms. Roberts was the sole member of SLR, LLC in 2016, so the proceeds from the refinancing of her premarital home would have been disbursed to Ms. Roberts through the LLC.

---

[7] Roberts' Exhibit 8.
[8] Roberts' Exhibit 37, Commercial Loan Application; Roberts' Exhibit 39, Loan Billing Statement; and Roberts' Exhibit 40, Disbursement Authorization and Cash Payment Summary.

9

Case 18-83442-CRJ7    Doc 600    Filed 11/18/22    Entered 11/18/22 11:14:47    Desc Main
Document    Page 9 of 20

According to Nicholson, the Debtor was in partnership with Owen Roberts, but to her knowledge the Debtor never actually contributed any capital in the various businesses in which they were owners. She further testified that she was not aware of any loans made by Ms. Roberts to the Debtor and that she was specifically not aware of Ms. Roberts putting any money into Tennessee Valley Equipment, a business financed by Nicholson's bank.

- ***Sale of Ms. Roberts' Home - $49,163***

On February 6, 2018, SLR, LLC sold 4004 Toney Ct. for $359,000.[9] After paying off the first mortgage secured by Ms. Roberts' premarital home, SLR, LLC received cash at closing in the amount of $49,163.97.[10]

Ms. Roberts argues that she loaned the proceeds from the sale of her premarital home to the Debtor to invest in various business ventures. It is undisputed, however, that $29,000 of the proceeds were used to pay off the balance owed to Ms. Roberts' mother for the down payment on Upper Big Cove Road. According to Ms. Roberts, the Debtor used the balance of the proceeds, $20,000, to invest in Bullet & Barrel. Ms. Roberts testified that the Debtor told her that the money would be paid back or would come back to her, but the funds were needed for Bullet & Barrel. Ms. Roberts did not offer any documentation or other evidence in support of these allegations.

- ***Tax Debt from Sale of Lower Big Cove Rd. - $23,937 and 4004 Toney Ct. - $10,000***

Alan Bibb (hereinafter "Bibb"), a Certified Public Accountant with Melvin, Bibb, Segars, & Associates, P.C., testified that the sale of the Debtor's premarital home, Lower Big Cove Rd., is reflected on Ms. Roberts' 2016 Federal Tax Return which resulted in a tax liability owed by SLR, LLC in the amount of $23,937.[11] Ms. Roberts' 2018 Federal Tax Return includes taxes

---

[9] Roberts' Ex. 84, Closing Disclosure; Ms. Roberts' Exhibit 85, Settlement Statement.
[10] *Id.*
[11] Roberts' Ex. 72, 2016 Federal Tax Return.

10

owed by SLR, LLC in the amount of $9,876 for the sale of her premarital home located at 4004 Toney Ct.[12] Bibb further confirmed that no loans between the Roberts were reported on their tax returns which they filed separately.

Ms. Roberts testified that the proceeds from the sale of her premarital home were invested by the Debtor in Bullet and Barrel, and that she is still paying the related tax debt. She further testified that the Debtor agreed in the Settlement Agreement to pay the tax debts. The Roberts' tax accountant confirmed that the Debtor spoke with him during the Roberts' divorce mediation and was satisfied that the 2016 taxes owed in the amount of $23,937 were related to the sale of his premarital home.

The Interested Parties argue that Ms. Roberts' 2016 tax liability in the amount of $23,937 and her 2018 tax liability in the amount of $9,876 were calculated based on Ms. Roberts' entire income for the respective tax years, including income from other sources. They further argue that at least a portion of the taxes owed on the sales of Lower Big Cove Road and 4004 Toney Ct. were owed, in part, due to the offset of passive income taken by Ms. Roberts. Ms. Roberts counters that any offsets were based on rental income and that there is no evidence how the rental income was spent.

- ***Annuities Owned by Ms. Roberts - $80,000***

It is undisputed that Ms. Roberts had approximately $100,000 remaining in a premarital annuity at the time of her marriage to the Debtor. Ms. Roberts testified that she depleted the annuity by loaning the Debtor $80,000 during their marriage to invest in various businesses, including Madison Beverage, Tennessee Valley Equipment, and DuraGate. This testimony was contradicted by the Roberts' banker, Nicholson, who testified that the Debtor never infused any

---

[12] Roberts' Ex. 71, 2018 Federal Tax Return

11

Case 18-83442-CRJ7    Doc 600    Filed 11/18/22    Entered 11/18/22 11:14:47    Desc Main
Document      Page 11 of 20

capital into these businesses. Nevertheless, Ms. Roberts testified that she was constantly reassured by the Debtor that the money was going to come back to her and further reassured that the Debtor had sufficient life insurance presumably to reimburse any funds loaned. During the hearing, Ms. Roberts admitted that she was surprised to find out that the Debtor never invested in any of the businesses that he owned with his older brother.

The Interested Parties argue that the funds may have been used for certain home renovations or other living expenses. On cross-examination, Ms. Roberts admitted that she deposited funds from her annuity into her Progress Bank account during her marriage from which various living expenses were paid. Ms. Roberts further admitted that she had no accounting of how the funds were disbursed to or used by the Debtor.

- ***North Alabama Bank -$9,335***

On February 8, 2018, Ms. Roberts paid North Alabama Bank $9,335 on account of a loan owed by the Debtor.[13] Nicholson testified that North Alabama Bank loaned the Debtor $10,000 to pay his taxes and that Ms. Roberts paid off the loan by writing a check on account of the tax loan. Ms. Roberts once again testified that she was reassured by the Debtor that the money was going to come back to her.

- ***Funds Invested in Stain Removal Business - $15,000***

Ms. Roberts testified that she and the Debtor invested $15,000 in a stain removal business owned by his brother. According to Ms. Roberts, she was assured by the Debtor that the money would come back or be taken care of from the Debtor's life insurance proceeds. During her testimony, Ms. Roberts did not specify where she and her husband obtained the funds to invest in the stain removal business. She merely stated that she and the Debtor invested funds in the business

---

[13] Roberts' Ex. 97, North Alabama Bank Statement.

on two separate occasions. Although she could not remember exactly when they invested in the business, she stated that it was around the time that they refinanced something or did something else. Ms. Roberts could not state when the funds were loaned to the Debtor nor offer any documentation in support of this alleged loan.

- ***Funds in Investment Account - $10,000***

Ms. Roberts testified that she loaned the Debtor $10,000 to either invest in another business venture or to possibly fund various life insurance policies. Ms. Roberts did not state when this amount was loaned to the Debtor nor offer any documentation in support of this alleged loan.

17. In addition to Ms. Roberts' testimony, Murray, the managing member of Bullet & Barrel, testified regarding the Debtor's membership interest in Bullet & Barrel and the reasons she eventually terminated the Debtor's employment. Murray stated that the Debtor told her that he had obtained funding to invest in Bullet & Barrel from his father and from his wife's mother, Schlitter. She was unaware of any funds loaned by Ms. Roberts to the Debtor to invest in Bullet & Barrel and disputes Ms. Roberts' allegations that she owned an interest in Bullet & Barrel.

18. John Watts (hereinafter "Watts"), an investment banker for the Roberts, testified that he had no knowledge of any loans made by Ms. Roberts to the Debtor. Watts was present at a meeting with the Roberts during which a check in the amount of $25,000 was deposited into Ms. Roberts account, but was unaware of the reason for the transfer. Mark Kent, a businessman who was involved in the refinance of the Roberts' marital home, also testified that he had no knowledge of any loans made by Ms. Roberts to the Debtor.

13

Case 18-83442-CRJ7    Doc 600    Filed 11/18/22    Entered 11/18/22 11:14:47    Desc Main
Document      Page 13 of 20

## CONCLUSIONS OF LAW AND RULING

When a debtor declares bankruptcy, creditors "are entitled to file a proof of claim—*i.e.,* a document providing proof of a "right to payment," 11 U.S.C. § 101(5)(A)—against the debtor's estate."[14] Under the Bankruptcy Code, the term "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"[15] A proof of claim which is properly filed and executed constitutes "prima facie evidence of the validity and amount of the claim."[16] Pursuant to 11 U.S.C. § 502(a) of the Bankruptcy Code, a verified proof of claim is presumed valid and is deemed allowed unless a party in interest objects.[17]

In the Eleventh Circuit, an objection to claim "'must contain some substantial factual basis to support its allegation of impropriety,' . . . and 'overcome the [creditor's] prima facie case.'"[18] Courts in the Eleventh Circuit have explained that "where the objecting party can produce evidence 'at least equal in probative force to that offered by the proof of claim,' the evidentiary burden shifts back to the claimant to prove the validity and amount of its claim."[19] By offering "specific and detailed allegations that place the claim into dispute [or] by the presentation of legal arguments based upon the contents of the claim and its supporting documents," or the lack thereof, an objecting party may successfully shift the evidentiary burden back to the creditor.[20] Once the

---

[14] *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 449 (2007).
[15] 11 U.S.C. § 101(5)(A).
[16] Rule 3001(f) of the Federal Rules of Bankruptcy Procedure.
[17] 11 U.S.C. § 502(a).
[18] *In re Baggett Bros. Farms, Inc.*, 315 F. App'x. 840, 843 (11th Cir. 2009)(quoting *Matter of Mobile Steel Co.,* 563 F.2d 692, 701 (5th Cir. 1977) and *Matter of Multiponics, Inc.,* 622 F.2d 709, 714 (5th Cir. 1980)).
[19] *In re Narcise*, 2022 WL 3954514 *3 (Bankr. M.D. Fla. 2022)(citing *In re Foley & Assocs., Const. Co., Inc.,* 2007 WL 2316939 *1 (Bankr. M.D. Fla. 2007))(Colton, J.).
[20] *Id.*

burden shifts back to the creditor, the Eleventh Circuit has stated that the creditor must "prove the validity of the claim by a preponderance of the evidence."[21]

If an objection to claim is filed, a bankruptcy court must "determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount" unless the claim falls within one of the exceptions set forth in § 502(b)(1)-(9) of the Bankruptcy Code.[22] In this case, the exception at issue is § 502(b)(1) which provides that a claim is shall be disallowed if the "claim is unenforceable against the debtor and property of the debtor under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]"[23] The Eleventh Circuit has stated that a claim is unenforceable under § 502(b)(1) "if such claim would not be enforceable against the debtor outside of bankruptcy."[24]

In this case, the Interested Parties argue that Ms. Roberts' claim is unenforceable under Alabama law because Ms. Roberts failed to establish: (i) that she loaned any funds to the Debtor; (ii) that to the extent any funds were exchanged between Ms. Roberts and the Debtor, there is a presumption under Alabama law that such *inter vivos* transfers constitute a gift between spouses which do not require repayment; and (iii) that there are no documents or other tangible evidence supporting Ms. Roberts' contentions that the Debtor ever agreed that any of the purported financial transactions between the Roberts were loans.

The argument of the Interested Parties that the funds provided by Ms. Roberts to the Debtor were a gift is based on state law. In Alabama, the elements of a gift are: "1) An *intention* to give and surrender title to, and dominion over, the property; 2) *Delivery* of the property to the donee;

---

[21] *In re Baggett Bros. Farms, Inc.*, 315 F. App'x. at 843 (11th Cir. 2009)(quoting 4 Collier on Bankruptcy ¶ 502.02[3][f] (15th ed. rev.2007)).
[22] 11 U.S.C. § 502(b).
[23] 11 U.S.C. § 502(b)(1).
[24] *In re Sanford*, 979 F.2d 1511, 1513 (11th Cir. 1992).

15

and 3) *Acceptance* by the donee."[25] The Supreme Court of Alabama has made it clear that there must be "[a]n intention to give and surrender title to, and dominion over the property; delivery of the property to the donee; and acceptance by the donee."[26] With respect to inter-family transfers, a rebuttable presumption arises that a gift was intended when transfers are made between family members. The Supreme Court of Alabama has explained the nature of this rebuttable presumption as follows:

> In trusts ... between family relatives, no evidence is necessary, in the first instance, to show the operation of the rule, since a presumption arises on the face of the transaction that a gift was intended, and that no trust results. This result, however, is merely a presumption, and may be overcome. Extrinsic evidence, either written or parole, is admissible on behalf of the husband or parent paying the price to rebut the presumption of an advancement or gift, and to show that a trust results; and, conversely, such evidence may be used to fortify and support the presumption. In general, this extrinsic evidence, to defeat an advancement and establish a trust as against the party to whom the property is conveyed or transferred and those holding under him, must consist of matters substantially contemporaneous with the purchase, conveyance, or transfer, so as to be fairly connected with the transaction.
>
> Where the purchase price is paid by husband or father out of his own funds, and conveyance taken in the name of wife or child, the presumption is that a gift or advancement is intended. This presumption may be overcome by proof that no gift or advancement was intended. This also, according to the authorities, must be clearly and convincingly shown in such cases. It is the intention of the parties in such cases that must control, and what that intention was may be the subject of proof.[27]

The Interested Parties object to Ms. Roberts' Supplemental Claim based on the lack of documentation offered by Ms. Roberts in support of the claim and the heightened scrutiny which must necessarily surround intra-family transfers. The Court finds that the Interested Parties have

---

[25] *Dobson v. Vick,* 27 So.3d 469, 475 (Ala. 2009).
[26] *Dupree v. PeoplesSouth Bank*, 308 So.3d 484, 492 (Ala. 2020)(finding that son failed to establish that father made an inter vivos gift of a CD where father deposited the funds for the CD in father and son's name, but immediately pledge the CD as collateral for a business loan).
[27] *Van Hoof v. Van Hoof,* 997 So.2d 278, 290 (Ala. 2007)(quoting *Montgomery v. McNutt*, 214 Ala. 692, 108 So. 752 (1926)).

16

produced more than sufficient factual evidence to support their general allegations and to overcome the prima facie evidentiary effect of the Supplemental Claim, thus shifting the evidentiary burden back to Ms. Roberts to prove the validity of her claim by a preponderance of the evidence. For the reasons set forth herein, the Court further finds that Ms. Roberts failed to establish the validity of her claim by a preponderance of the evidence, except as otherwise set forth herein.

It is undisputed that the Roberts did not execute any promissory notes or other documents evidencing the loans which are the basis of Ms. Roberts' Supplemental Claim. Further, Ms. Roberts did not offer any informal records evidencing the disbursement of any funds from her annuity to the Debtor, nor any records reflecting the disbursement of funds from SLR, LLC to the Debtor. To the extent any funds were transferred, it is evident that the Roberts never discussed repayment terms nor envisioned that the Debtor would be required to repay Ms. Roberts at any specific time.

None of the witnesses called by Ms. Roberts provided specific testimony or evidence that Ms. Roberts loaned any funds to the Debtor. Murray testified that the Debtor told her that he had obtained funding to invest in Bullet & Barrel from his father and from his wife's mother, Schlitter, but she is unaware of any funds loaned by Ms. Roberts to the Debtor. The Roberts' investment banker and family friend, Watts, stated that he had no personal knowledge of any loans made by Ms. Roberts to the Debtor. Similarly, Nicholson, the banker who financed many of the businesses in which the Debtor had an interest with his brother, stated that she was unaware of any loans that Ms. Roberts had made to the Debtor. Nicholson further confirmed that the Debtor never infused any capital into any of the businesses funded by his older brother.

The Roberts' tax accountant, Bibb, also testified that the Roberts did not include any loans from Ms. Roberts to the Debtor in any of their tax returns. Bibb explained that had there been any loans between the Roberts, the loans should have been reported on their tax returns because they filed their returns separately. Had the Debtor been paying interest on the loans, he should have reported the interest payments on his returns as an expense and Ms. Roberts should have reported same as income. However, it is undisputed that the Roberts never discussed repayment terms, including the payment of interest on the funds Ms. Roberts asserts that she loaned to the Debtor.

In this case, the primary evidence of any loans from the Debtor to Ms. Roberts was the uncorroborated testimony of Ms. Roberts. Ms. Roberts repeatedly testified that she had been reassured by the Debtor that everything would be taken care of and that everything would come back to her. It is unclear what the Debtor meant by these alleged statements, but Ms. Roberts clearly believed that the Debtor would either repay her certain funds, or that they would somehow profit from the Debtor's business pursuits. Ms. Roberts candidly testified that she voluntarily made transfers to the Debtor to help him fund Bullet & Barrel, as well as other businesses, and that no repayment terms were ever discussed. Nevertheless, what is most telling in this case is that Ms. Roberts was unable to provide probative evidence of the Debtor's intent to repay her for funds advanced except her unsupported testimony, evidence which is quite thin. There is no documentation regarding any specific disbursements from her premarital assets to the Debtor, nor even specific dates when the transfers were alleged to have occurred. In fact, Ms. Roberts failed to prove by a preponderance of the evidence that she transferred any specific funds from her annuity to the Debtor and failed to prove by a preponderance of the evidence that the Debtor used any funds that were owned by SLR, LLC to fund his various business interests. Beyond Ms. Roberts' self-serving testimony that she depleted her premarital annuity by loaning $80,000 to the

18

Debtor during their marriage to fund Bullet & Barrel and that the Debtor used the funds in SLR, LLC to fund other businesses, Ms. Roberts failed to produce any specific evidence that funds were ever disbursed directly to the Debtor. The Interested Parties dispute Ms. Roberts' allegations that funds were transferred and contend that it is just as likely that the funds were used by the Roberts to renovate their marital home or by the Roberts to pay other living expenses. Thus, Ms. Roberts failed to establish by a preponderance of the evidence that funds were transferred by SLR, LLC to the Debtor or by Ms. Roberts to the Debtor from her premarital assets.

Similarly, the Court finds that Ms. Roberts failed to establish by a preponderance of the evidence that she loaned any funds to the Debtor from her premarital assets to invest in his brother's stain removal business or to fund the insurance policies. Ms. Roberts' testimony regarding the alleged transfers was vague at best and not persuasive.

However, to the extent Ms. Roberts paid the tax debt in the amount of $23,937.00 which SLR, LLC owed following the sale of the Debtor's premarital home, the Court finds that the transfer or assumption of the debt by Ms. Roberts as the sole member of SLR, LLC after the Debtor removed himself from the LLC was not a gift. It is clear from the evidence that Ms. Roberts never intended to pay the tax debt related to the sale of her husband's premarital home and that this was a debt that the Debtor should repay. To the extent the Interested Parties assert that this debt should be adjusted by certain offsets claimed by Ms. Roberts on her tax returns, the Court is satisfied that the Debtor acknowledged the existence of the debt when the parties were negotiating the terms of their divorce agreement even though it was never finalized nor approved, and further finds that no adjustments based on the tax offsets are necessary or appropriate based upon the totality of the circumstances of this case.

The Court further finds that when Ms. Roberts paid North Alabama Bank $9,335 on account of a loan owed by the Debtor, Ms. Roberts paid the debt on behalf of the Debtor with the intention that the Debtor would pay her back. This transaction occurred just a few months before Ms. Roberts filed for divorce. Accordingly, it is unlikely at that time that Ms. Roberts intended the transaction to be a gift.

Accordingly, for the reasons stated herein, the Court finds that Ms. Roberts established by a preponderance that she has a right to payment against the bankruptcy estate in the total amount of $33,272.00 consisting of: (i) the taxes that became due in the amount of $23,937.00 following the sale of the Debtor's premarital home; and (ii) the loan Ms. Roberts paid off in the amount of $9,335.00 on behalf of the Debtor at North Alabama Bank. To the extent Ms. Roberts asserts that she loaned funds to the Debtor from her premarital annuity or through disbursements made by SLR, LLC, the Court finds that Ms. Roberts failed to establish by a preponderance of the evidence that she delivered or disbursed such funds to the Debtor and that he accepted those funds as a loan which could form the basis of a valid claim for Ms. Roberts.

A separate order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

Dated this the 18th day of November, 2022.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge